## FOSTER & KLEISER CO. v. SPECIAL SITE SIGN CO.*

No. 8069.

Circuit Court of Appeals, Ninth Circuit.

Sept. 22, 1936.

*Rehearing denied Nov. 16, 1936.

744

Morrison, Hohfeld, Foerster, Shuman & Clark and Herbert W. Clark, all of San Francisco, Cal., and Gibson, Dunn & Crutcher and Norman S. Sterry, both of Los Angeles, Cal. (J. Hart Clinton and Boice Gross, both of San Francisco, Cal., of counsel), for appellant.

H. W. Glensor, of San Francisco, Cal., Charles W. Cradick and George K. French, both of Los Angeles, Cal., and Roy E. Jackson, of Seattle, Wash., for appellee.

Before WILBUR, MATHEWS, and HANEY, Circuit Judges.

WILBUR, Circuit Judge.

This action was brought by the appellee-plaintiff to recover damages under the Sherman Anti-Trust Act of July 2, 1890 (chapter 647, §§ 1, 7, 26 Stat. 209, 210, 15 U.S.C.A. §§ 1, 15 note), because of an alleged conspiracy on the part of the appellant-defendant corporation to secure and maintain a monopoly of the outdoor advertising business in the Pacific Coast states.

The business of both parties is that of placing advertising matter upon billboards located in various places in the Pacific Coast states. They sell advertising space upon these billboards owned and maintained by them and paste lithographs, or advertising matter, thereon, or paint the advertisement thereon, as the case may be.

The business is essentially local in character. The posted bills remain as posted according to the terms of the contract under which the advertising display is made.

In order to bring the conduct of the parties within the jurisdiction of Congress and within the terms of the Sherman Anti-Trust Act (15 U.S.C.A. §§ 1–7, 15 note), which forbids conspiracies having for their purpose the restraint of interstate commerce or the securing of monopolies therein which affect the conduct of such interstate business, it is alleged in the complaint that in the bill posting business of the appellant large quantities of material used in the construction of the billboards, as well as the posters used thereon, are moved from state to state. Thus, it is contended that if Foster and Kleiser ship nails, boards, posters, or other material from one state to another for the purpose of erecting billboards, this constitutes interstate commerce. But as the appellant merely ships this material from one of its agents to another, it could scarcely be contended that it had conspired to restrict its own activities in such interstate commerce, and the effect of such shipments may clearly be disregarded in considering the right of the appellee for damages for the alleged misconduct of the appellant.

It is also alleged in the complaint that the posters and lithographs used upon the billboards are an essential part of the outdoor advertising business, and that these posters and lithographs are manufactured in other states, particularly in Kentucky and Ohio, and transported from the place of manufacture to the billboards upon which they are to be displayed, and the appellee particularly relies upon the alleged restriction of this transportation of posters in interstate commerce as a violation of the Sherman Anti-Trust Act by which it has been damaged. It seeks to recover damages because its interstate commerce in posters and stencils was unlawfully restricted. In support of this proposition the appellee alleges that the posting of bills or posters usually involves an advertiser, a lithographer, and a billposter; that the advertiser secures the poster from the lithographer and makes his contract with the billposter for the displaying of these posters upon its billboards; that the posters are shipped to the billposter, either by the advertiser, or at his direction, by the lithographer; that lithographers print large numbers of posters as sample posters, or stock posters, for sale to the smaller advertising concerns whose business does not justify the preparation of special lithographs; that their posters are purchased by billposters

and advertisers throughout the United States and that these lithographs so purchased are moved in interstate commerce; that when an advertiser contracts for billposting in a particular city or town, such work is known to the trade as local work, while if he contracts with billposters in various localities in the same or different states such work is known as national work.

It will be observed that these allegations are entirely consistent with the idea that the appellant billposting concern, aside from its shipments to its various branches had nothing to do with the shipment of posters or their movement in interstate commerce, but received such posters either from the advertiser or the lithographer and displayed the same in accordance with contracts made with the advertiser so to do. An examination of the allegations concerning the methods alleged to have been adopted by the appellant to obtain the monopoly charged indicate that these methods almost entirely relate to the securing of advertising sites, that is, locations for billboards, and with the alleged interference by the appellant with the appellee in its effort to secure and retain such advertising sites. So far as the competition between the parties to this action relates to the securing or retaining of leases for the erection and maintenance of billboards, it is clear that the operations referred to are local and beyond the power of regulation by Congress. Carter v. Carter Coal Co., 56 S.Ct. 855, 80 L. Ed. 1160, decided May 18, 1936; Schechter Poultry Corp. v. U. S., 295 U.S. 495, 55 S. Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947. Such local operations, not constituting interstate commerce, are expressly excluded by Congress from the operation of the Sherman Anti-Trust Act, which by its terms relates only to conspiracies and monopolies in restraint of interstate commerce.

The appellant contends that the complaint does not state a cause of action because of the failure to make any substantial showing that the appellant has interfered with interstate commerce or to disclose any damages resulting to the appellee by reason of its interference with interstate commerce. In making this claim appellant asks us to ignore specific allegations by appellee that its interstate commerce and trade was interfered with by appellant, upon the ground that such allegations are mere conclusions of law, and claims that if such allegations of the complaint are ignored, as they should be, without them the allegations of fact in the complaint are insufficient to allege any cause of action under the Sherman Anti-Trust Act. The general allegation of interference with interstate commerce is a conclusion of law and is controlled by the specific allegation of facts, as to the nature of the appellant's business. We will further consider this question later in the opinion.

Although, as appellant contends, this question arises upon the allegations of the complaint, it arises more sharply with reference to the instructions given and refused by the trial judge upon the subject of what constitutes interstate commerce.

We will first consider the assignments of error relating to that subject, for if a new trial is ordered because of errors in instructing the jury in the progress of the case, then on the new trial, leave should be granted to amend the complaint to state a cause of action if it can be done, based upon interference with interstate commerce, for as has been specifically held by the Supreme Court, interstate trade in posters to be used upon billboards comes within the protective provisions of the Sherman Anti-Trust Act and justifies an action for damages by any one injured by reason of such a violation of that act. Ramsay Co. v. Associated Bill Posters, 260 U.S. 501, 43 S. Ct. 167, 67 L.Ed. 368.

The appellant contended throughout the trial that the billposting business was essentially local and that interference with the leases of the appellee and with the procurement of leases, and with the display upon billboards upon such leased premises, was purely an interference with intrastate business, and therefore not subject to control by Congress and that such damage as resulted from the acts of appellant in connection with the leases procured or sought to be procured by the appellee was not the result of an interference with interstate trade. This contention was clearly correct. It requested the court to give instructions upon that subject, Nos. 6, 9–a, 10, and 13, set out in the footnote.[1] The appellant re-

---

[1] "6. In this action, plaintiff charges that the defendants have monopolized, and attempted to monopolize, and are now monopolizing, interstate trade and commerce in outdoor advertising in the manner and by the means alleged in said complaint, and have engaged in a conspiracy and combination to place unlawful re-

served exceptions to the refusal of these instructions and also excepted to those given by the trial judge, among others, Nos. 9 and 11, shown in footnote.[2]

By the eleventh instruction the jury was informed that if the business of Foster and Kleiser "required as an indispensable element the transportation of goods or mate-

straints upon trade and commerce in posters and lithographs between the several states. This charge is the basis upon which plaintiff seeks to recover. It is denied by the defendants. Before the plaintiff can recover, it must prove by a preponderance of all the evidence that the defendants were guilty of the said charge, or at least of some portion thereof. The court charges you that the business of outdoor advertising as conducted by either plaintiff or Foster and Kleiser Company, is not in and of itself interstate trade or commerce within the meaning or purview of the United States anti-trust laws. The posting or display of posters or lithographs by either plaintiff or defendant, Foster and Kleiser Company, is not a part, element or act of interstate trade or commerce nor does it become a part, element or act of interstate trade or commerce merely because the defendant, Foster and Kleiser Company, had advertising structures in several different states upon which it posted or displayed the same posters or lithographs, nor does such posting or display of posters or lithographs become interstate trade or commerce by reason of the fact that a large portion of the advertisements posted or displayed are of goods that are sold or shipped in interstate trade or commerce. Hence, a monopoly or an attempt to monopolize the business of outdoor advertising as such in one or more of the several states of the Pacific Coast area would not in and of itself be a breach of the anti-trust laws, or give a right of action to the plaintiff. Before the plaintiff can maintain this action it must show either an actual monopoly or a conspiracy by the defendant, Foster and Kleiser Company to monopolize or attempt to monopolize interstate trade or commerce between two or more of the several states."

"9–a. The court charges you that the term 'interstate trade or commerce in outdoor advertising' as used throughout these instructions means the shipment from one state into another state or states of posters or lithographs, for posting or display in the state or states into which such posters or lithographs are shipped. The act of an outdoor advertiser, after receiving such shipment of posters or lithographs, in posting or displaying them would not be an act of interstate commerce; the only part, act or element of interstate trade or commerce connected with outdoor advertising upon the Pacific Coast is, as stated, the ship-

ment from one state into another state or states of posters or lithographs to be posted or displayed in the state or states into which such advertising matter is shipped.

"10. Before any act or acts of the defendants, or either of them, can form or give a basis for or a right of recovery, it must be shown by a preponderance of all of the evidence that such act or acts of defendants, or either of them, must have directly and unreasonably restrained interstate shipments of posters or lithographs; a mere incidental, indirect or remote effect upon or restraint of such shipments of posters or lithographs from one state into another state or states for posting and display in the state or states into which such posters or lithographs are shipped, would not give a basis for a right of recovery herein."

"13. The pleadings and the evidence show that a very large part of the business of outdoor advertising does not involve any element of interstate trade or commerce. The court charges you that the plaintiff cannot base any right of recovery against the defendants, or either of them, because of any monopoly of or conspiracy to acquire a monopoly in outdoor advertising which did not involve an element of interstate trade or commerce or which did not unreasonably restrain interstate trade or commerce in shipment of posters or lithographs."

[2] "9. In reaching a conclusion in this case you must first determine whether or not the business in which Foster & Kleiser Company is engaged and which it is charged that the defendants have monopolized or attempted to monopolize, or conspired to restrain, is in fact interstate commerce.

"If you decide that it is, you will next determine whether or not the defendants have committed any of the acts charged as violations of the anti-trust laws with relation to the same as those acts are described in plaintiff's complaint.

"If you find this to be the case you will next find whether or not the plaintiff was injured in its business or property by such violations.

"Then if you find such injury to have taken place, you will ascertain the amount of it and award to the plaintiff such sum as will reasonably compensate it for the damage so sustained.

"In all of the questions mentioned your finding must be in accordance with the preponderance of the evidence, and unless

rials, or the transmission of orders across state lines, then you will be justified in finding that the business in which the defendant Foster & Kleiser Company is engaged was interstate in character. The term 'commerce' comprehends more than the mere interchange of goods. It embraces intercourse in all its branches." It will be observed that in view of the fact that the business of Foster and Kleiser was conducted in several states, and that some materials for billboards were shipped from state to state, and that orders from the headquarters of the appellant were transmitted to its agencies in other states, it follows that by this instruction the jury were in effect instructed that the Foster & Kleiser Company was engaged in interstate commerce.

During the exceptions to the instructions reserved by the appellant, the court interjected another instruction to the jury regarding the question of interstate commerce, as follows: "The Court. You will pause right there. I think this, perhaps, may pertinently be said to the jury: That regardless of the type of business Foster & Kleiser was engaged in, the business that must have been restrained or monopolized, within the meaning of and as explained to you in the charge, must have been interstate commerce. That, I think, will set the matter clear."

After the jury retired it returned into court with a request for additional instructions. At this time the court instructed it as follows:

"The Court. I have a communication from the foreman of the jury to this effect: May we have that portion of your instructions to the jury which relate to the general subject of interstate commerce, re-

---

you resolve all of the first three inquiries mentioned in favor of the plaintiff your verdict must be for the defendant.

"11. You are instructed that the commerce or trade which may be interstate is not confined to the carriage of goods only but means intercourse of any kind carried on across state lines. *If you find from the evidence in this case that a necessary feature of the outdoor advertising business, contemplated, involved and required as an indispensable element the transportation of goods or materials, or the transmission of orders across state lines, then you will be justified in finding that the business in which the* defendant Foster & Kleiser Company is engaged was interstate in character. The term 'commerce' comprehends more than the mere exchange of goods. It embraces commercial intercourse in all its branches.

"It has been testified to in this case on behalf of plaintiff that the business of the defendant Foster & Kleiser Company was the posting upon their structures of lithographs, posters, prints, practically all of which were manufactured outside of the state of California; that at the time of manufacture it was the design of the manufacturer that the same would be transported to the various states of the Union where they were used for the purpose of public and outdoor advertising; that it was the intention of those purchasing the same or the agencies that shipped such commodities across state lines that the same would be displayed by agencies in the same business as that of the defendant Foster & Kleiser Company. If you find from the evidence in the case that the display upon the billboards of the defendant was a necessary part of the business described and was contemplated at the time that the goods were manufactured and shipped into the state, then you are justified in concluding that the business of Foster & Kleiser Company was interstate in character.

"The mere placing of advertising matter upon sign boards without the presence of the other features mentioned, would not in and of itself constitute interstate commerce.

"Before any act or acts of the defendants, or either of them, can form or give a basis for a right to recovery it must be shown by a preponderance of all of the evidence that such act or acts, or either of them, must have unreasonably restrained interstate commerce in the business of outdoor advertising, or has had the effect of monopolizing or attempting to monopolize the same.

"Various acts are charged against defendants by the plaintiffs such as acquiring the business of its competitors in various places, unlawfully depriving the plaintiff in the action of its sites, securing sites not reasonably necessary for its growth, building obscuring structures on its own property for the purpose of obscuring the signs of the plaintiff, paying more for advertising sites than they were reasonably worth and many other acts. You are instructed that before any of such acts can form the basis of a verdict against defendants you must find that the effect of such must have been unlawfully to restrain interstate commerce in the business of outdoor advertising as the same has heretofore been defined to you, or of monopolizing or attempting to monopolize the same."

748

straint of trade, monopoly or attempt to monopolize and possible damages? Does the commission of one or more overt acts, as alleged in the complaint, justify finding against the defendants?

"This seems to call for an instruction on interstate commerce.

."Now, I will read again the law, start with that, the instruction containing the law, under which this action is brought. I think I will follow my original intention and refer to the section of the law itself. It is this:

" 'Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade and commerce among the several states or with foreign nations is declared to be illegal. Every person who shall make any such contract or engage in any such combination or conspiracy shall be guilty of a misdemeanor' and shall be dealt with in a certain way.

"You will observe, gentlemen, that the statute does not define 'restraint of trade.' It does not say what it is. That has been passed upon by the courts and I might say, generally, that it means not something merely slight or merely incidental, but something direct in the way of trade.

"Section 2 of the act [15 U.S.C.A. § 2] treats of monopolies. 'Every person who shall monopolize or attempt to monopolize or combine or conspire with any other person or persons to monopolize any part of the trade or commerce among the several states or with foreign nations shall be deemed guilty of a misdemeanor'. Meaning, of course, interstate commerce; it must be interstate commerce always. The statute does not say precisely what interstate commerce is.

"Now, with reference to that I have attempted to speak in a way or to give you what I deem to be the important distinguishing mark of interstate commerce. It means that there is some element in the business—some necessary element, some essential element, some essential part of it without which it cannot be carried on—that involves and requires the transportation across state lines of some materials.

"If, now—and I use this illustration— you find that it is an essential part of this business of outdoor advertising. that lithographs are made outside of the state wherein they are used and from there transported to the place where they are used, and that was the original design and plan and the parties connected with it intended that that

should be done, then you are justified in finding that that is interstate commerce. That is as nearly the test as I think I can readily give to you.

"Cases have been before the courts involving the shipment of wheat, and wheat that comes from another state, of course that is interstate commerce if it crosses state lines. But there are so many variations to it that sometimes the cases will get into the courts. And even though wheat is within the state where it is raised, if the intention is to send it to a place outside of the state and it starts on that journey, then it is in interstate commerce within the state where it is raised because the element of the transportation across state lines is involved and is the necessary part of the transaction, deal, business, or whatever it may be.

"I will read again the instruction: You are instructed that the commerce or trade which may be interstate is not confined to the carriage of goods only but means intercourse of any kind carried on across state lines. If 'you find from the evidence in this case that a necessary feature of the business of the Foster & Kleiser Company, being the outdoor advertising business, contemplated, involved and required as an indispensable element the transportation of goods or materials, or the transmission of orders across state lines, then you will be justified in finding that the business in which the defendant Foster & Kleiser Company is engaged was interstate in character. The term 'commerce' comprehends more than the mere exchange of goods. It embraces commercial intercourse in all its branches.

"I will not repeat the remainder of that because that was, I think, just repeated in another form to you.

"Now, with respect to monopoly, I read to you section 2 of the United States Code [15 U.S.C.A. § 2] which covers that subject: 'Every person who shall monopolize or attempt to monopolize or combine or conspire with any other person or persons to monopolize any part of the trade or commerce among the several states or with foreign nations shall be deemed guilty of a misdemeanor', etc., and possibly to damages. * * *

"A Juror: Your Honor, may I ask you one question?

"The Court: Yes.

"The Juror: Will you define the word 'orders' as used there?

"The Court: The word 'orders'?

"The Juror: 'Orders.'

"The Court: Did I understand you to say 'orders,' o-r-d-e-r-s? Is that the word that is used? I think I did. 'The transmission of orders across state lines'; in other words, that means property purchased by 'orders' from outside of the state. I would not think, however, that merely because things were ordered it would be—although there are two decisions to support that—that you would be justified in finding from that fact alone that it was interstate commerce. The criterion, to my mind, being, as I have tried to explain to you, that if it was contemplated in order to carry on the business that these lithographs, posters, or whatnot, be transported across state lines and they were a necessary part of the business, then the business was interstate commerce.'

"I can say that evidently that was the way in which it was held, according to the Mack decree, because you will remember that the Mack decree started out and said 'The doing of any of these things shall be deemed'—and I do not pretend to quote the words precisely—a violation of the interstate commerce act. They did not use that term but they did use the Sherman Act and the Clayton Act. And evidently in that case this business was regarded as interstate commerce because they were prohibited from doing the thing that the plaintiff charges that the defendants did here, that is, excluding them from participation in the ownership of sign posting apparatus, in effect. I do not recall the term that was used. And in that case that business of outdoor advertising was held to be, or, rather, the violation or the monopoly, I will say, of that business of outdoor advertising was held to be a violation of the Sherman Act, therefore, that business was held to be interstate commerce.

"I have not that decree before me. I read it to you before, however, so of course you remember it. * * *"

Before the jury retired, the following occurred:

"A Juror: Your Honor, I think that this gentleman, Mr. Foy, would like to ask you a question. The question was on receiving posters here and not giving orders for them, would that be considered interstate commerce? Would they be considered—

"The Court: It goes back to the proposition of the creation; if those were or-dered for the purpose and with a view that they would be shipped across state lines, then the statute would be satisfied.

"The Juror: Regardless of where the order came from?

"The Court: I think, regardless of where the order came from, yes."

By these instructions the jury were in effect told that if lithographs manufactured outside of the state of California were manufactured with the intent on the part of the manufacturer that they were to be used in various states in the Union and that if the purchaser shipped such posters so manufactured across state lines for display by the appellant and others similarly situated, appellant's business was interstate in character; also by instructions 9 and 11 (see footnote No. 2), that if the appellant was engaged in interstate commerce and was guilty of the conduct described in appellee's complaint which was mainly an alleged interference with the securing of sites for billboards, it was liable in this action for the damages suffered by the appellees from such activities to be trebled by the court.

In dealing with the question of damages in its instruction, the court instructed the jury that the acts of the appellant in acquiring the business of its competitors and in unlawfully depriving appellee of its advertising sites and in securing advertising sites not reasonably necessary for the appellant's operations, and in building structures on its own property for the purpose of obscuring signs of the appellee, and in paying more for advertising sites than they were reasonably worth, and in many other acts, local in character, should not form the basis of a verdict against the appellant unless the effect of such acts unlawfully restrained interstate commerce in the business of outdoor advertising. Thus the court instructed the jury that if these purely local acts resulted in injury to the appellee it could recover therefor under the Sherman Anti-Trust Act if the effect of these acts was to in any way restrain interstate commerce, as previously defined in the instruction. (As we have shown, this definition included the entire billposting business, if posters were manufactured for interstate transportation and so transported.) In effect, the jury was instructed that appellant was liable for damages resulting from these local acts if they in any way restrained the interstate commerce in posters, lithographs, or other materials manufactured for and shipped in

interstate trade and used by appellants. Under this instruction if the appellee lost a number of its billboards and was thus unable to secure advertising matter to post thereon from the residents of other states, or the same state, although this inability to secure such advertising matter arose entirely from its inability to use the same by reason of not having a sufficient number of sites for display, the jury was required to find that such a restriction was a violation of the Sherman Anti-Trust Act and the appellee was entitled to recover damages therefor.

The theory of these instructions, and of the appellee's whole case, was that if the business of appellee and appellant could be tied up to interstate commerce through the interstate transportation of bills and display advertising matter, then the whole business became interstate in character and any damages suffered by the appellee because of an illegal restraint in the business must be compensated by the appellant because of the liability imposed on the appellant by the Sherman Anti-Trust Act. This theory is entirely erroneous and is not the law.

■ By these instructions the court ignored the hiatus which existed between the manufacture and the transportation of the lithographs, and also between the transportation and the display thereof; the display being essentially local in character after all transportation, local or interstate, had ceased. Packer Corp. v. State of Utah, 285 U.S. 105, 52 S.Ct. 273, 76 L.Ed. 643, 79 A. L.R. 546. Under such circumstances, in order to come within the provisions of the anti-trust laws, the effect upon interstate commerce must be direct and not remote and must be the result of an intent to restrain interstate commerce. Coronada Coal Co. v. United Mine Workers, 268 U.S. 295, 45 S.Ct. 551, 69 L.Ed. 963; Packer Corp. v. St. of Utah, supra. The mere inability of the appellant's competitors to use posters because they could not secure sites for billboards is so indirect an effect upon the commerce in billposting material as to be beyond the regulatory power of Congress. It is not covered by the Sherman Anti-Trust Act. Blumenstock Bros. Adv. Agcy. v. Curtis Pub. Co., 254 U.S. 436, 40 S.Ct. 385, 64 L.Ed. 649; Industrial Ass'n of S. F. v. U. S., 268 U.S. 64, 45 S.Ct. 403, 69 L.Ed. 849. It is true that the court instructed the jury that the mere placing of advertising matter upon sign boards "without the presence of the other features mentioned would not in and of itself constitute interstate commerce." But the court was evidently of the opinion, and so instructed the jury, that if the billposting was contemplated at the time the posters were manufactured and shipped for posting, then the business of billposting became interstate commerce, and appellant would be liable for damages to appellee for injuries arising from all its local acts of monopoly. In this the court erred. What occurs before transportation and after transportation in interstate commerce is generally within the legislative power of the state and not that of United States unless the effect upon interstate commerce is direct. Schechter Poultry Corp. v. U. S., supra. The Sherman Anti-Trust Act regulating interstate commerce must be construed with reference to the respective powers of the state and the United States over the business transactions of the people.

Another instruction objected to by appellant was that with relation to the statute of limitations. The applicable statute of limitations is section 338, subd. 1, Cal.Code Civ.Proc., which provides for a three-year limitation upon a claim based upon a statutory liability. This statute, it is agreed, had run June 21, 1928. The trial court instructed the jury that if they should find that the conspiracy continued up to June 21, 1928, and if they found that Foster and Kleiser performed acts in furtherance of such conspiracy on or since that date, they might in their verdict include all damages that were suffered by the appellee before June 21, 1928, that were the result of the operations of the appellant pursuant to the conspiracy. In support of this instruction, the appellee relies upon United States v. Kissel, 218 U.S. 601, 31 S.Ct. 124, 54 L.Ed. 1168, where, in a criminal prosecution brought against defendants for a conspiracy punishable under the Sherman Anti-Trust Act, the Supreme Court held that the applicable statute of limitations did not begin to run so long as the conspiracy continued, and that such a conspiracy is a single offense.

■ In a civil action for damages sustained because of a conspiracy in restraint of trade, the right of recovery is not based upon the conspiracy, but upon the injuries resulting therefrom. The fact that there may be a criminal conspiracy does not give a plaintiff an action for damages under section 7 of the Anti-Trust law, 15 U.S.C.A. § 15 note, supra. Glenn Coal Co. v. Dickin-

son Fuel Co. (C.C.A.) 72 F.(2d) 885; Strout v. United Shoe Machinery Co. (D. C.) 208 F. 646, 651. The gist of the action under this section is for injuries inflicted pursuant to the conspiracy for which the wrongdoer is liable. Morris & Co. v. Nat'l Ass'n of Stationers (C.C.A.) 40 F.(2d) 620. The cause of action arises when the damage is sustained and the statute of limitations begins to run at that time. Bluefields S. S. Co. v. United Fruit Co. (C.C.A.) 243 F. 1, 20. In Bluefields S. S. Co. v. United Fruit Co., supra, plaintiffs brought an action under the Sherman Anti-Trust Act to recover damages for injuries alleged to have been sustained in consequence of defendant's creating in itself a monopoly in the banana business as forbidden and declared unlawful by the act. It was there held that the statute of limitations began to run when the damage occurred.

Under this decision, in a civil action for damages under the Sherman Anti-Trust Act, a plaintiff may recover only such damages as have been sustained within the applicable period of limitations immediately preceding the filing of the action. In Baush Machine Tool Co. v. Aluminum Co. of America (C.C.A.) 79 F.(2d) 217, 227, the plaintiff sued for treble damages arising from defendant's violation of the anti-trust laws, alleging that defendant had monopolized interstate trade in virgin aluminum by unlawfully combining and agreeing with foreign producers. It was held that "the plaintiff's damages, if any, suffered more than six years before this suit was brought, were not recoverable because of the bar of the statute of limitations."

In Buckeye Powder Co. v. E. I. Du Pont de Nemours Powder Co., 248 U.S. 55, 39 S.Ct. 38, 39, 63 L.Ed. 123, the Supreme Court had under consideration a suit for damages resulting from a conspiracy forbidden by the Anti-Trust laws. Mr. Justice Holmes, speaking for the court, in discussing the question of the statute of limitations, said: "The next matter requires but a few words. The plaintiff offered in evidence decrees in a proceeding by the Government finding the Dupont Company guilty under the Sherman Act of an attempt to monopolize. [Case cited.] These of course were held inadmissible. The Court also ruled that the statute of limitations barred recovery for any damage suffered before September 18, 1905, six years before the beginning of the present suit. The plaintiff now contends that the Clayton

Act of October 15, 1914 [citing act (15 U. S.C.A. § 16)] making admissible such criminal judgments 'hereafter rendered,' in some way should affect our decision upon a ruling made years before, and that by virtue of the same section the running of the statute of limitations was suspended retrospectively as to claims already barred, pending the Government suit. These matters do not need more than a statement of what was argued and what was done." The decision of the trial court in that case was affirmed. Thus it was assumed that the statute of limitations began to run as to each item of damages from the time it occurred (unless the statute was tolled by the Clayton Act during the pendency of the criminal or civil prosecution).

Appellee contends, however, that if the instruction constituted error, it was harmless error, because appellant waived the defense of the statute of limitations by failing to plead the statute applicable, and, furthermore, because appellee was entitled to a peremptory instruction that the statute was tolled because of fraudulent concealment of the cause of action. Neither of these contentions were presented to the trial court. It was assumed in the trial court that the statute of limitation was properly pleaded, and that section 338, subd. 1, of the California Code of Civil Procedure was the applicable statute. In any event, therefore, appellee cannot here claim waiver, having treated appellant's plea of the statute as sufficient upon the trial. Churchill v. Woodworth, 148 Cal. 669, 84 P. 155, 113 Am.St.Rep. 324; So. Pac. Co. v. Santa Cruz, 26 Cal.App. 26, 145 P. 736. Moreover, the case should not be here disposed of upon an entirely different theory [see Sacramento Suburban Fruit Lands Co. v. Melin (C.C.A.) 36 F.(2d) 907, 909; Peck v. Heurich, 167 U.S. 624, 17 S. Ct. 927, 42 L.Ed. 302], nor is such theory tenable.

Appellee's present contention is that the applicable statute of limitations is section 338, subd. 4, Cal.Code Civ.Proc., which provides that an action for relief on the ground of fraud or mistake shall not be deemed to have occurred until the discovery by the aggrieved party of the facts constituting the fraud or mistake, and not by section 338, subd. 1, supra, which was pleaded by appellant. Appellee's contention is that although that statute by its terms applies only to actions for relief from fraud or mistake, the California decisions

hold it also applicable to cases where there has been fraud in the concealment of the existence of a cause of action, whether the cause of action itself be based on fraud or not. It cites in support of this proposition of law the following decisions of the California Supreme Court: Kane v. Cook, 8 Cal. 449; Kimball v. P. G. & E., 220 Cal. 203, 30 P.(2d) 39; Lightner Min. v. Lane, 161 Cal. 689, 120 P. 771, Ann.Cas.1913C, 1093.

The Supreme Court of California, in a decision more recent than any other of those cited above, has clarified the matter. In Kimball v. Pacific Gas & Elec. Co., 220 Cal. 203, 30 P.(2d) 39, supra, it was held that "the three-year period provided for in section 338, subdivision 4, of the Code of Civil Procedure, applies only where fraud is the gravamen of the original action."

 It also held that, "independent of statute, a fraudulent concealment by the defendant of the facts upon which a legal common-law action is based, under the proper circumstances, tolls the statute until discovery, and that upon discovery the statute applicable to that particular action * * * then commences to run." Under that decision when fraud is not the gravamen of the action, in order to toll the applicable statute of limitations, two factors must be present: (1) Fraudulent concealment; (2) nondiscovery, that is, absence of facts that would put a party upon notice of the cause of action. Mere ignorance of the injury complained of, or of the facts constituting such injury, will not prevent the running of the statute. Lightner Min. Co. v. Lane, supra. See, also, Kimball v. P. G. & E., supra, 220 Cal. 203, 30 P.(2d) 39, 43. See, also, our decisions as to California law in Sacramento Suburban Fruit Lands Co. v. Johnson (C.C.A.) 36 F.(2d) 935, citing the general rule stated in 37 C.J. 939; Sacramento Suburban Fruit Lands Co. v. Lindquist (C.C.A.) 39 F.(2d) 900; Sacramento Fruit Lands Co. v. Tipper (C.C.A.) 36 F.(2d) 941. The evidence does not show that appellant fraudulently concealed its monopolistic activities, but clearly shows that appellee had knowledge of sufficient facts to put it upon notice of these activities, and of its resultant damage.

Appellee, in its brief points out the following testimony, which it contends shows concealment:

(1) Charles King, president and stockholder of the appellee, testified that upon complaint by him as to appellant's activities, Mr. Kleiser told him that "the trouble was that the two companies were not in close enough personal touch."

(2) King further testified (in the same conversation referred to above) that in answer to his complaint that appellant had obstructed a certain location of his, Kleiser had promised that it would be removed right away.

(3) King testified that in 1929 Foster and Kleiser "built out" a Special Site Sign near Merced, and that when this was called to appellant's attention appellee was told that "it had been done unintentionally."

But the following evidence shows that appellee had knowledge of facts sufficient to put it upon notice of the character of appellant's enterprise:

Charles King, president and manager of appellee, testified that in a conversation with Mr. Lausen, general manager of Foster and Kleiser, relating to signs appellee had on the Peninsula, Lausen said: "We are going to get that location King if it costs us $10,000. I want to warn you King, we are out to get you," and that he enumerated five companies they had put out of business. This was in 1920. King also testified that in the same year he was invited to participate in the conspiracy in that Kleiser proposed to make him head of a country department which department he was informed was "for the purpose of crushing independent firms," that Mr. Thompson, assistant general manager of Foster and Kleiser, informed him that his job would be to go into small towns where independents were getting a foothold and put them out of business before they got under way, or, as Thompson put it, "in other words, crush them in the shell."

 In the face of this and other evidence of a similar nature introduced by appellee, it is clear that there was no evidence sufficient to show concealment of the cause of action. Consequently, the trial court's instruction to the jury to assess damages for all injuries sustained at any time during the conspiracy, although beyond the period fixed by the parties under the applicable statute of limitations was erroneous and prejudicial, although the jury in the case at bar rendered a verdict for an amount far less than the amount claimed. Jayne v. Loder (C.C.A.) 149 F. 21, 7 L.R.A.(N.S.) 984, 9 Ann.Cas. 294; Starr v. Los Angeles Ry. Corp., 187 Cal. 270, 201 P. 599.

We have not disposed of the claims of the parties with reference to the duty to plead facts with reference to the discovery of fraud, as bearing upon the applicable period of limitation for bringing the action, for the reason that this question is presented to us by the appellant, only to meet the new position of the appellee first taken on appeal, and not presented to the trial court, which position we hold is untenable under the evidence, and consequently not available to cure the error in the instructions given the jury on the subject of the statute of limitations.

 It may be noted that appellee also contends that section 338, subd. 4, is the applicable statute of limitations because at the time the case came to trial that subdivision applied to cases of relief from fraud, mistake, *or conspiracy*. It is a sufficient answer to this contention to say that at the time the complaint and answer in the case at bar were filed this statute had not been amended to cover conspiracy. The words "or conspiracy" were inserted in the statute by amendment of August, 1933 (St.Cal. 1933, p. 878). This amendment was repealed September, 1935 (St.Cal.1935, p. 1673). The complaint herein was filed June 11, 1932, and the answer of Foster and Kleiser was filed February 15, 1933.

It is contended by the appellant that the complaint fails to state a cause of action under the Sherman Anti-Trust Act, and consequently that the federal courts have no jurisdiction over the action.

The conspiracy alleged is one to monopolize outdoor advertising, or as stated in the complaint, "to monopolize * * * said interstate trade and commerce in outdoor advertising," and "to place unlawful restraints upon trade and commerce in posters and lithographs between the several states."

 In the main, the theory of the complaint is that the business of outdoor advertising, as conducted by the parties, is per se interstate commerce, because of the fact that various materials, used in the business are transported across state lines; and because the business is conducted in several states, and the products advertised are transported in interstate commerce. This theory is erroneous. Business may be and usually is composed of both intrastate and interstate operations. The fact that these operations are conducted by a single corporation or individual does not make the

entire business so conducted either interstate commerce, or intrastate commerce. The character of the business is determined by the particular transactions involved and the respective jurisdiction of the federal and state governments is determined thereby. An interesting illustration of this proposition is found in the decision of the Supreme Court in Smith v. Illinois Bell Telephone Co., 282 U.S. 133, 51 S.Ct. 65, 75 L. Ed. 255. It follows that the allegations of the complaint that the outdoor advertising business is interstate commerce must be disregarded as a mere conclusion of the pleader, unsupported by the specific allegations as to the nature of the business, which is intrastate in character. Therefore, as the outdoor advertising business is not interstate commerce, but is local in character, the theory of the pleader must fail to that extent.

 We have remaining the charge that the appellant conspired to restrain interstate commerce in posters and lithographs. The means alleged to have been used to carry out the conspiracy are fifteen in number, eight of these acts relate to the procurement or cancelling of leases for sites for billboards, or the maintenance thereof; one relates to the giving of "unfair and discriminatory prices" for display of outdoor advertising; and another to the cutting of prices for outdoor advertising, to induce the plaintiff's customers to break their contracts with it. Other means alleged to have been used to interfere with plaintiff's outdoor advertising business are misrepresentations to plaintiff's customers calculated to cause them to transfer their outdoor advertising business to the defendant. It is also alleged that defendant granted "preferences, priorities, rebates and discriminations relative to prices and terms of contracts for the display of outdoor advertising matter, * * * for the purpose of preventing plaintiff from carrying on its lawful business and the interstate trade and commerce in outdoor advertising."

It is also alleged that the defendant paid a commission of 16⅔ per cent. on contracts for outdoor advertising secured by the National Outdoor Advertising Bureau and only 10 per cent. to other solicitors, for the purpose of securing the award of outdoor advertising contracts to the exclusion of its competitors.

All the means alleged to have been used for the carrying out of the conspiracy were

adopted to the injury or destruction of the plaintiff's business in its intrastate aspects. None are alleged to have directly affected the interstate trade in posters or lithographs. The claim of appellee for damages in the sum of $383,112.50, to be trebled is based upon the injury to plaintiff's outdoor advertising business; by the various acts of the defendant directed to that end. Neither the allegations of damages nor the allegations of the acts of the conspirators in inflicting the damage are in any way related to the allegation as to a conspiracy to restrain interstate trade and commerce in posters and lithographs. In the absence of an allegation of the causal connection between the damage, and the conspiracy to restrict interstate commerce in posters, no cause of action is stated under the Sherman Anti-Trust Act. For these reasons, the complaint does not state a cause of action within the jurisdiction of the federal court. The general demurrer should have been sustained.

The judgment is reversed, with directions to the trial court to sustain the general demurrer and dismiss the cause unless plaintiff applies for leave to amend its complaint to conform to the decision herein. The application to be accompanied by the proposed amendment, and to be made within thirty days after remittitur is filed in the lower court.

Reversed, with directions.