**UNITED STATES v. STARLITE DRIVE-IN, Inc. et al.**

No. 10649.

United States Court of Appeals
Seventh Circuit.

May 21, 1953.

Daniel M. Friedman, Washington, D. C., Willis L. Hotchkiss, Chicago, Ill., Charles H. Weston, Sp. Asst. to the Atty. Gen., Newell A. Clapp, Acting Asst. Atty. Gen., Victor H. Kramer, Sp. Asst. to the Atty. Gen., E. Houston Harsha, Ralph M. McCareins, Charles W. Houchins, Chicago, Ill., for the United States.

Leonard Carriere, Blue Island, Ill., Edward Blackman, Philip R. Toomin, Seymour F. Simon, Thomas C. McConnell, J. H. Schwartz and Jacob Cohen, Chicago, Ill., Sheldon O. Collen, Ode L. Rankin, Chicago, Ill., of counsel, for appellees.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

MAJOR, Chief Judge.

This is an appeal by the government from an order entered April 23, 1952, dismissing an indictment which charged the defendants with conspiring to fix admission prices of drive-in theatres in violation of § 1 of the Act of Congress of July 2, 1890, Title 15 U.S.C.A. § 1, commonly known as the Sherman Act. The order was entered after oral argument, during which the District Judge expressed the view that the indictment was faulty for failure to factually allege that interstate commerce was directly affected. The issue here is whether the court erred in the view thus expressed and in its order of dismissal.

The defendants are all operators of drive-in theatres located in Cook County, Illinois. Their business activity is limited to the showing of motion pictures in their respective theatres. No defendant is engaged in or has any connection with the production or distribution of motion pictures. The indictment, stripped of its verbosity and legal conclusions, alleges no more than that the defendants agreed to and did fix uniform admission prices. Specifically, the indictment alleges that the defendants engaged in a combination and conspiracy in unreasonable restraint of trade and commerce among the several states, the substantial terms of which were "(a) to fix and establish uniform and non-competitive prices to be charged for admission to the drive-in theatres of the corporate defendants and the co-conspirator; and (b) to refrain from charging a group admission price to said theatres based on a fixed charge per automobile."

True, the indictment in a paragraph entitled "Effects" alleges:

"The effects of the aforesaid combination and conspiracy, among others, have been as follows:

(a) The flow in interstate commerce of motion picture films into the drive-in theatres operated by the corporate defendants and the co-conspirator has been substantially restrained;

(b) Members of the public have been denied the opportunity to see motion pictures at the drive-in theatres operated by the corporate defendants and the co-conspirator at admission prices determined in a free, competitive market;

(c) Distributors have been deprived of the benefits of a free, competitive market for the motion pictures distributed by them, in interstate commerce, to the corporate defendants and the co-conspirator."

The substance of defendants' argument is that the "effects" thus alleged are mere conclusions of the pleader, without basis in the factual allegations. Such being the case, the allegations entitled "Effects" are not admitted by the motion to dismiss. We agree with this reasoning. Whether the indictment states an offense must be determined from the allegations of fact, that is, whether the agreement or combination fixing uniform prices for admission under the circumstances alleged constitutes an anti-trust violation. As noted, no agreement is asserted between exhibitors and either distributors or producers, no agreement which bears any relation to

the price paid by the defendant exhibitors for the films—in fact, no agreement relating in any manner or form to the films but only to the price which exhibitors will charge their theatre patrons for the privilege of witnessing a display of the films. It is evident that the interstate nature of the dealings between the distributors and the exhibitors by which the latter obtain the films is terminated prior to their exhibition. A decision, therefore, simmers down to the narrow question as to whether the price-fixing agreement charged has or could have any appreciable effect upon the flow of films in interstate commerce. It appears that the theory which the government embraces carries it into a field of speculation and conjecture, as is epitomized by the legal effects which the indictment alleges. No facts are alleged and it is not reasonably discernible how or in what manner the condemned agreement affected commerce. Certainly there is no basis for a claim that the movement of films in interstate commerce was either enhanced or diminished or that any discrimination resulted either to exhibitors in the procurement of films or to their patrons in viewing the films. Distributors were as free to deal with exhibitors, and the latter were as unfettered in the procurement of film as they would have been in the absence of the charged conspiracy. The agreement had nothing to do with the price which the distributor received for its film or the price which the exhibitor paid for it. The agreement was between local parties and related solely to a business that was typically intrastate in its nature. We agree with the District Court in its conclusion that the indictment was defective for failure to state a cause of action.

We think no good purpose could be served in an attempt to discuss and dissect the numerous anti-trust cases upon which the government relies. We are not unmindful of the fact that the commerce clause has been broadly interpreted, in fact, to such an extent that it sometimes appears that there is embraced in its broad sweep all the activities of mankind. Notwithstanding, there is no case of which

we are aware that has gone as far as the government would have us go in the instant situation. This the government tacitly concedes. And we gather that this is a test case to ascertain if a court can be induced to further broaden the sweep of the commerce clause to activities local in nature.

The difference between the instant situation and those cases on which the government relies is illustrated by United States v. Crescent Amusement Co., 323 U.S. 173, 65 S.Ct. 254, 89 L.Ed. 160. In that case, the Supreme Court determined that interstate commerce was affected where a group of exhibitors combined to obtain agreements with distributors under which the exhibitors were granted discriminatory preferences over their competitors in licensing films. In consequence of the conspiracy there asserted, films in the course of being licensed in interstate commerce were channeled into theatres other than those into which they would have gone if a competitive system of distribution had been in effect. In the present case, as already noted, there is no charge that distributors were in any way involved in the alleged conspiracy or that films were licensed in any manner different from what they would have been had no restraint been imposed. It was pointed out in the Cresent case, 323 U.S. at page 183, 65 S.Ct. at page 259: "The showing of motion pictures is of course a local affair." Other cases are similarly distinguishable. See Interstate Circuit, Inc., v. United States, 306 U.S. 208, 59 S.Ct. 467, 83 L.Ed. 610; United States v. Paramount Pictures, Inc., 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260; Schine Chain Theatres, Inc., v. United States, 334 U.S. 110, 68 S.Ct. 947, 92 L.Ed. 1245; and United States v. Griffith, 334 U.S. 100, 68 S.Ct. 941, 92 L.Ed. 1236.

True, there are cases which hold that restraints on local commerce are illegal if their result is a substantial and adverse effect on interstate commerce. Illustrative are Mandeville Island Farms, Inc., v. American Crystal Sugar Co., 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328, and United States v. Women's Sportswear Manufacturers

Association, 336 U.S. 460, 69 S.Ct. 714, 93 L.Ed. 805. In the latter case the court stated, 336 U.S. at page 464, 69 S.Ct. at page 716: "The source of the restraint may be intrastate, as the making of a contract or combination usually is; the application of the restraint may be intrastate, as it often is; but neither matters if the necessary effect is to stifle or restrain commerce among the states. If it is interstate commerce that feels the pinch, it does not matter how local the operation which applies the squeeze."

In the Mandeville case, three sugar refiners agreed to buy beets at a price predicated on the average net returns of all three from the sale of sugar rather than upon the separate returns of each purchasing refiner, as they formerly had done. The result was that under the refiners' agreement, the refiners all paid uniform prices for beets of the same quality. The court's decision turned on the fact that the effect of the refiners' act in fixing uniform prices for their purchases of raw material necessarily was to reduce competition between them in the interstate distribution of their finished sugar products. Neither this case nor any other, however, supports the theory advanced here that local activities are illegal simply because they concern articles which have previously moved in interstate commerce. Nor do they hold that a price-fixing agreement between local retailers dealing in a product produced in another state is illegal in the absence of a specific showing of the effect of the conspiracy on interstate commerce.

The defendant Essaness Theatres Corporation joined with all defendants in the general motion to dismiss the indictment and in addition filed a separate motion predicated upon a ground peculiar to it. The District Court apparently found it unnecessary to pass upon this separate motion in view of its ruling upon the motion of all defendants. We also find it unnecessary, in view of our holding, to discuss or decide the question raised by Essaness in its separate motion.

The order appealed from is
Affirmed.