Herbert TOBMAN, Dave Greenfield and Norman Weiner, co-partners, doing business under the firm name of Aquasheen, Plaintiffs,

v.

COTTAGE WOODCRAFT SHOP, David Belsky, O. Ames Company, Earl Brooks and R. P. Brooks, individually and as co-partners doing business as R. P. Brooks & Son, Defendants.

Civ. No. 64–61.

United States District Court
S. D. California,
Central Division.

May 16, 1961.

84

Willard D. Horwich, Beverly Hills, Cal., for plaintiffs.

John Lloyd Welbourn, Los Angeles, Cal., and Leo Considine, Santa Ana, Cal., for defendant O. Ames Co.

John Lloyd Welbourn, Los Angeles, Cal., for Cottage Woodcraft Shop, David Belsky, Earl Brooks, R. P. Brooks and R. P. Brooks & Son.

BYRNE, District Judge.

Plaintiffs operate a swimming pool retail supply business in Los Angeles and sell, among other things, patio furniture. They filed their complaint for treble damages for violation of antitrust laws, alleging as grounds for the court's jurisdiction the Act of 1890, 26 Stat. 209, 15 U.S.C.A. §§ 1–3, and § 15 note; and 26 Stat. 210, 15 U.S.C.A. §§ 5–7, § 15 note.

The defendant Ames Co. manufactures a specialized line of patio furniture which it sells to various dealers throughout the United States, parting with full title and ownership which become vested in the buyer.

The defendants R. P. Brooks, Earl Brooks and R. P. Brooks & Son, are the Southern California agents for defendant Ames.

Defendants David Belsky and Cottage Woodcraft Shop operate a retail furniture store and sell, among other things, patio furniture manufactured by defendant Ames, thereby competing with plaintiffs.

Plaintiffs allege that defendant Ames, acting in combination with the other defendants, has attempted to fix, establish, maintain and control the retail price of its patio furniture in the following manner:

1. Defendant Ames distributes to its retail dealers a suggested retail price list.

2. Defendant Ames, by and through its agents, defendants Brooks, has persons go to the various retail dealers selling Ames patio furniture. These persons attempt to purchase such furniture for less than the suggested retail price, and then report back to defendants Brooks as to whether the retail dealers so visited are conforming to the suggested retail price.

3. Defendants Brooks then inform retail dealers selling below the suggested price that they will no longer be able to purchase Ames patio furniture unless they immediately conform to the retail prices suggested by defendant Ames.

4. If the retail dealers are unable to satisfy defendants Brooks that they will henceforth sell at the suggested retail prices, defendants Brooks notify defendant Ames to cease shipping patio furniture to such dealers.

5. Defendant Ames then ceases shipping its merchandise to the retail dealers designated by defendants Brooks.

It is next alleged that plaintiffs were the victims of the procedure outlined above when, on August 1, 1960, defendants Cottage and Belsky caused defendants Brooks to have a person go to plaintiffs' store and there try to buy Ames patio furniture for less than the price shown on the suggested retail price list supplied to plaintiffs by defendant Ames. On this occasion, plaintiffs did sell some of the furniture for less than the suggested retail price, in consequence of which defendants Brooks informed plaintiffs that defendant Ames would never thereafter supply plaintiffs with Ames patio furniture.

Plaintiffs have leased their business premises for three years with an option to renew the lease for an additional two years, beginning on March 15, 1960. Plaintiffs' reasonable expectation was that their business relationship with defendant Ames would continue for at least five years and that plaintiffs would realize a profit from the sale of Ames product of not less than $3,000 per year, or a total of $15,000 for the five-year period.

Therefore, because of defendant Ames' refusal to sell plaintiffs any more of its furniture, plaintiffs claim to have been damaged in the sum of $15,000.

As a second cause of action, plaintiffs allege that prior to August 1, 1960, defendants Cottage and Belsky, and other retail dealers selling Ames patio furniture (the names of these other dealers being unknown to plaintiffs), agreed to restrict the price at which Ames furniture would be sold to the public in Southern California. Pursuant to this agreement, all of the defendants did the acts previously described, thereby damaging plaintiffs in the sum of $15,000.

On March 13, 1961, defendant O. Ames Co. filed its alternative motions to dismiss, for summary judgment, to strike the complaint, and for a more definite statement. On March 16, 1961, the remaining defendants, Cottage Woodcraft Shop, David Belsky, Earl Brooks and R. P. Brooks, individually and as co-partners doing business as R. P. Brooks & Son, filed similar alternative motions.

It is defendants' contention that neither Count I nor Count II of the complaint states a claim upon which relief can be granted for the following reasons:

1. There is no allegation of a contract, or a combination in the form of trust or otherwise, or conspiracy, in restraint of trade.

2. There is no showing that defendants' acts have injured the public.

3. Since defendant Ames' merchandise is trademarked, defendant's requiring plaintiffs to sell this merchandise at suggested retail prices does not violate the California Fair Trade Act, and hence is not illegal under § 1 of Title 15 U.S.C.A.

These points raised by defendants will be considered together with an additional ground, viz., the effect of defendants' acts upon interstate commerce.

■ *Necessity of alleging contract, combination or conspiracy.* The Sherman Act, 15 U.S.C.A. § 1, declares illegal, "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, * * * " Therefore, a contract, combination or conspiracy

is an essential element of a violation of the Sherman Anti-Trust Act, § 1 as amended, 15 U.S.C.A. § 1. Weir v. Chicago Plastering Institute, 7 Cir., 1959, 272 F.2d 883.

In United States v. Colgate & Co., 1919, 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992, the Supreme Court held that without an allegation of unlawful *agreement*, there was no Sherman Act violation. The Court said at page 307 of 250 U.S., at page 468 of 39 S.Ct.:

"The purpose of the Sherman Act is to prohibit monopolies, contracts and combinations which probably would unduly interfere with the free exercise of their rights by those engaged, or who wish to engage, in trade and commerce—in a word to preserve the right of freedom to trade. In the absence of any purpose to create or maintain a monopoly, the act does not restrict the long recognized right of trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal. And, of course, he may announce in advance the circumstances under which he will refuse to sell."

Thus, under the Colgate doctrine a manufacturer, having announced a price maintenance policy, may bring about adherence to it by refusing to deal with customers who do not observe that policy.

However, in Federal Trade Comm. v. Beech-Nut Packing Co., 1922, 257 U.S. 441, 42 S.Ct. 150, 66 L.Ed. 307, and United States v. Bausch & Lomb Optical Co., 1944, 321 U.S. 707, 64 S.Ct. 805, 88 L.Ed. 1024, the court narrowly limited Colgate so as to subject to Sherman Act liability the producer who secures his customers' adherence to his resale prices by methods which go beyond the simple refusal to sell customers who will not resell at stated prices.

The recent case of United States v. Parke, Davis & Co., 1960, 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 contains a thorough analysis of the cases in which the Supreme Court has considered the question of the type of acts necessary to constitute a combination in restraint of trade, and hence a violation of the Sherman Act. In the Parke case, the court stated at page 44 of 362 U.S., at page 511 of 80 S.Ct.:

" * * * The Bausch & Lomb and Beech-Nut decisions cannot be read as merely limited to particular fact complexes justifying the inference of an agreement in violation of the Sherman Act. Both cases teach that judicial inquiry is not to stop with a search of the record for evidence of purely contractual arrangements. The Sherman Act forbids combinations of traders to suppress competition. True, there results the same economic effect as is accompanied by a prohibited combination to suppress price competition if each customer, although induced to do so solely by a manufacturer's announced policy, independently decides to observe specified resale prices. So long as Colgate is not overruled, this result is tolerated but only when it is in consequence of a mere refusal to sell in the exercise of the manufacturer's right 'freely to exercise his own independent discretion as to parties with whom he will deal'. * * * When the manufacturer's actions, as here, go beyond mere announcement of his policy and the simple refusal to deal, and he employs other means which effect adherence to his resale prices, this countervailing consideration is not present and therefore he has put together a combination in violation of the Sherman Act. Thus, whether an unlawful combination or conspiracy is proved is to be judged by what the parties actually did rather than by the words they used. * * * "

■■ Thus, in order to be entitled to relief under the Sherman Act, plain-

tiff need not allege or prove either an express or implied agreement to fix prices. However, it is essential that he allege facts from which a *combination* for this purpose can be found; for the manufacturer's unilateral act in refusing to sell to a dealer who will not observe suggested retail prices, is not a violation of the Sherman Act.

In the instant case, there is no allegation *in haec verba* of a contract, combination or conspiracy on the part of defendants; and, as to the defendants Ames Co. and Brooks, there are no facts from which the existence of a contract, combination or conspiracy, can be inferred.

 The first count of the complaint alleges that defendant Ames Co., acting by and through its agents, the defendants Brooks, ascertained the names of dealers who were selling Ames products at retail prices below those suggested by defendant Ames. Defendant then refused to sell such dealers any more of its products. This course of conduct is clearly unilateral action on the part of defendant Ames because it did all of the acts through its agents, and the acts of a corporation's agents are the acts of the corporation. Nelson Radio & Supply Company v. Motorola, 5 Cir., 1952, 200 F.2d 911, certiorari denied 1953, 345 U.S. 925, 73 S.Ct. 783, 97 L.Ed. 1356. Moreover, no agreement, combination or conspiracy can be inferred, since a principal cannot conspire with his agent. Alexander v. Texas Company, D.C.W.D.La.1957, 149 F.Supp. 37. Therefore defendant Ames, through its agents, alone did the acts claimed to constitute a violation of § 1, of the Sherman Act.

Plaintiffs have in substance alleged no more than a refusal by defendant Ames Co. to sell to them because they did not adhere to the minimum retail prices suggested by this defendant. Such unilateral action on the part of defendant is sanctioned by the Colgate case, supra, and cannot be construed as a combination to suppress competition or restrain trade forbidden by § 1 of the Sherman Act.

 The second count alleges that the defendants Cottage and Belsky, retail dealers in competition with plaintiffs, agreed to, and did, restrict the price at which Ames furniture would be sold to the public in Southern California. Such an agreement would seem to constitute an unlawful combination on the part of these two defendants, and other, unnamed retail dealers.

Therefore, plaintiffs have sufficiently alleged a contract, conspiracy or combination on the part of defendants Cottage and Belsky and other retail dealers.

 However, to state a claim for violation of the Sherman Anti-Trust Act, it is necessary that plaintiff allege that defendants' acts affected interstate commerce. Mead's Fine Bread Co. v. Moore, 10 Cir., 1953, 208 F.2d 777, reversed on other grounds 1954, 348 U.S. 115, 75 S.Ct. 148, 99 L.Ed. 145; United States v. Starlite Drive-In, 7 Cir., 1953, 204 F.2d 419; Northern California Monument Dealers Ass'n v. Interment Ass'n, D.C.N.D.Cal.1954, 120 F.Supp. 93; Myers v. Shell Oil Co., D.C.S.D.Cal.1951, 96 F.Supp. 670. As expressed by the court in Mead's Fine Bread Co. v. Moore, supra, at page 779 of 208 F.2d:

"* * * But, whether the claim is asserted under the Sherman Act, 15 U.S.C.A. §§ 1–7, 15 note, or the Clayton Act, as amended, 15 U.S.C.A. § 12 et seq., the wrongs complained of must involve interstate commerce, either in 'effect' or 'purpose', for obviously, the acts can have no greater potency than the commerce clause itself.

"Local conduct which is separable and unrelated to interstate commerce is necessarily insulated from the operation of the anti-trust laws, * * * *"

In paragraph III of the complaint, plaintiffs allege: "Each and every one of the acts herein alleged to have been done by the defendants has resulted in the restraint of interstate commerce in

the City of Los Angeles, California, and in the Southern District of California, and elsewhere, and has tended to, and has actually created a restraint of trade or commerce in interstate commerce within the said District, and plaintiffs herein have been injured by reason of the doing of the said acts in violation of the United States Anti-Trust laws."

■ This is the only allegation in which there is any mention of the effect of defendants' acts upon interstate commerce. Such a general allegation of interference with interstate commerce is a conclusion of law and is controlled by the specific allegations of facts. Foster & Kleiser Co. v. Special Site Sign Co., 9 Cir., 1936, 85 F.2d 742, certiorari denied 1936, 299 U.S. 613, 57 S.Ct. 315, 81 L.Ed. 452.

■ In the instant case, there is nothing in the allegations of facts tending to show that interstate commerce was in any way affected by defendants' acts. Plaintiffs are retail furniture dealers in Los Angeles. Defendant Ames Co. through its agents, defendants Brooks, has refused to sell plaintiffs any more furniture because plaintiffs have not adhered to the retail prices suggested by defendant Ames. Interstate commerce has not been even remotely affected by any of the transactions detailed in the complaint. The fact that articles which are the subject of price-fixing agreements have previously moved in interstate commerce, does not by itself establish the requisite adverse effect upon interstate commerce. See United States v. Starlite Drive-In, 7 Cir., 1953, 204 F.2d 419, where the court states at pages 421 and 422:

"True, there are cases which hold that restraints on local commerce are illegal if their result is a substantial and adverse effect on interstate commerce. Illustrative are Mandeville Island Farms, Inc. v. American Crystal Sugar Co., 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328 * * *."

After discussing the Mandeville case, the court concludes at page 422:

" * * * Neither this case nor any other, however, supports the theory advanced here that local activities are illegal simply because they concern articles which have previously moved in interstate commerce. Nor do they hold that a price-fixing agreement between local retailers dealing in a product produced in another state is illegal in the absence of a specific showing of the effect of the conspiracy on interstate commerce."

Applying these principles to the case at hand, the plaintiffs have utterly failed to allege facts which demonstrate that defendants' actions had any effect whatsoever upon interstate commerce.

■ *Necessity of showing that defendants' acts have injured the public.* A showing of injury to the public is essential to the statement of a claim for violation of the anti-trust laws. Kinnear-Weed Corp. v. Humble Oil & Refining Co., 5 Cir., 1954, 214 F.2d 891, certiorari denied 1955, 348 U.S. 912, 75 S.Ct. 292, 99 L.Ed. 715; Hudson Sales Corp. v. Waldrip, 5 Cir., 1954, 211 F.2d 268, certiorari denied 1954, 348 U.S. 821, 75 S.Ct. 34, 99 L.Ed. 648; Alexander v. Texas Company, D.C.W.D.La.1957, 149 F.Supp. 37; Schwing Motor Company v. Hudson Sales Corporation, D.C.D.Md. 1956, 138 F.Supp. 899, affirmed 4 Cir., 1956, 239 F.2d 176; Northern California Monument Dealers Ass'n v. Interment Ass'n, D.C.N.D.Cal.1954, 120 F.Supp. 93. This principle is well stated by the court in Schwing Motor Company v. Hudson Sales Corporation, supra, at page 903 of 138 F.Supp.:

"The main purpose of the anti-trust laws is to protect the public from monopolies and restraints of trade, and the individual right of action for treble damages is incidental and subordinate to that main purpose. (Citing cases). Public injury alone justifies the threefold increase in damages. *It is essential,* therefore, *that the complaint allege facts from which it can be determined that the con-*

*duct charged to be in violation of the anti-trust laws was reasonably calculated to prejudice the public interest by unduly restricting the free flow of interstate commerce.* (Citing cases)." (Italics added.)

■ The instant complaint, by which plaintiffs seek treble damages for violation of the Sherman Act, is wholly devoid of any allegation of injury to the public on account of defendants' acts. The only injury of any kind claimed to issue from defendants' conduct, is the loss to plaintiffs of $15,000 potential profits from the sale of Ames patio furniture. Nowhere does the phrase "injury to the public" appear, and there are no facts alleged in the complaint from which such injury can be fairly inferred.

*Applicability of California Fair Trade Act to justify defendants' conduct, claimed to constitute a violation of the Sherman Act.* The first proviso of 15 U.S.C.A. § 1,[1] provides in essence that, notwithstanding the opening sentence (which makes illegal contracts, combinations and conspiracies in restraint of interstate or foreign commerce), contracts prescribing minimum resale prices of a commodity are not illegal when sanctioned by State law.

California Business and Professions Code § 16902(a) [2] part of the Fair Trade Act, makes legal contracts fixing the resale prices of trademarked commodities which are in fair and open competition with other commodities of the same general class and bear the trademark, brand, or name of the producer.

The affidvait of defendant Earl Brooks accompanying defendants' motions, discloses that each and every article of patio furniture manufactured by defendant O. Ames Co., as well as the containers in which this furniture is shipped, bears a trademark reading:

> "Ames Aire
> O. Ames Co.
> Parkersburg, West Virginia"

The affidavits of both defendant Brooks and defendant Belsky state that there are no fewer than twenty manufacturers of patio furniture in the United States, at least seven of which are located in Southern California; and that all of these patio furniture manufacturers are in direct and open competition with each other.

■ Plaintiffs have alleged merely that defendant Ames Co. distributed among its retail dealers a suggested retail price list; no contract between Ames and its customers fixing retail

1. "Provided, That nothing contained in sections 1–7 of this title shall render illegal, contracts or agreements prescribing minimum prices for the resale of a commodity which bears, or the label or container of which bears, the trade mark, brand, or name of the producer or distributor of such commodity and which is in free and open competition with commodities of the same general class produced or distributed by others, when contracts or agreements of that description are lawful as applied to intrastate transactions, under any statute, law or public policy now or hereafter in effect in any State, Territory, or the District of Columbia in which such resale is to be made, or to which the commodity is to be transported for such resale, and the making of such contracts or agreements shall not be an unfair method of competention under section 45 of this title: * * *"

2. "§ 16902. Certain sales contracts declared lawful.

"(a) No contract relating to the sale or resale of a commodity which bears or the label or container of which bears, the trademark, brand, or name of the producer or owner of such commodity and which is in fair and open competition with commodities of the same general class produced by others violates any law of this State by reason of any of the following provisions which may be contained in such contract:

"(1) That the buyer will not resell such commodity except at the price stipulated by the vendor.

"(2) That the vendee or producer require the person to whom he may resell such commodity to agree that he will not, in turn, resell except at the price stipulated by such vendor or by such vendee."

**90**

prices, is alleged. However, even if there were such a contract, it would be lawful under the California Fair Trade Act, § 16902(a), because defendant Ames' products are trademarked and sold in open competition with other commodities of the same general class.

Disregarding the affidavits and restricting attention solely to the complaint, it is clear that it fails to state a claim upon which relief can be granted as to defendants Ames Co. and Brooks because it fails to allege facts to show the existence of a contract, combination or conspiracy to violate the anti-trust laws, and as to all defendants because there is no showing that defendants' acts injured the public, or had any substantial and adverse effect upon interstate commerce.

The motion to dismiss the action is granted.