[L. A. No. 6556. In Bank.—May 18, 1921.]

A. PALADINI, Appellant, v. MUNICIPAL MARKETS COMPANY (a Corporation), Respondent.

[1] ACTIONS—SPLITTING OF CAUSE OF ACTION—PLEA IN ABATEMENT.— A party may not split up a single cause of action and make it the basis of several suits, and in such case the first action may be pleaded in abatement of any subsequent suit on the same claim.

[2] ID.—BURDEN OF PROOF.—A plea in abatement is an affirmative one and the burden is on the defendant to establish it.

[3] ACCOUNTS—SINGLE CREDITOR—SEVERAL BRANCHES OF BUSINESS— SEPARATE ACCOUNTS.—Where a single proprietor is conducting the same line of business in different towns and localities, operating them independently so far as dealing with customers is concerned, and keeping separate accounts as between the several branches of the business, the liability of purchasers from one or the other constitutes a separate account, even though the same customer buys from more than one of the branches.

[4] ID.—SINGLE ACCOUNT—OVERCOMING PRESUMPTION OF.—The undisputed fact that a creditor was operating two branch houses, and that an account sued upon in a previous action was ordered and delivered from its branch in one city, and the account sued on in the present action was ordered and delivered from its branch in another city, negatives any presumption of a single running account that might have arisen from the mere fact that the entire indebtedness was to a single creditor for the same line of goods throughout.

[5] ID.—PLEAS IN ABATEMENT—STRICT CONSTRUCTION.—Pleas in abatement are not favored and should be subjected to strict construction both as to pleading and evidence.

APPEAL from a judgment of the Superior Court of Los Angeles County. Lewis R. Works, Judge. Reversed.

The facts are stated in the opinion of the court.

William M. Morse, Jr., and Hoefler, Cook & Snyder for Appellant.

Fred W. Heatherly for Respondent.

SLOANE, J.—The plaintiff in this action was engaged in the wholesale trade of selling fish. He had branch establishments operating such business in various cities of California, one of which was at San Francisco and one at Monterey. Within two years prior to June 29, 1917, he had sold fish and fish products to the defendant, a dealer in Los Angeles, to the amount of $1,043.75. While all of said amount was due and owing, plaintiff brought suit in the justice's court of Los Angeles against the defendant and obtained judgment therein on an account for $231.82, for part of the goods which went to make up the total indebtedness of $1,043.75. The present action was brought subsequently in the superior court of Los Angeles County on an account for $811.93, the remaining sum of said total indebtedness. Judgment was for the defendant.

It is the defendant's contention that all the items aggregating the total amount constituted a single, open, and running account between the parties.

The defendant set up as its sole defense, and the trial court found, "That each and every and all items constituting the account mentioned in the amended complaint on file herein, and each, and every and all the items constituting the amount sued upon, and mentioned in said action in said Justices' Court, constituted, and do now constitute a part and parcel of said open and running account existing between plaintiff and defendant prior to said 29th day of June, 1917, and were, by reason thereof, necessarily involved in said former action," and further, "That by reason of the said premises this action" is barred by the adjudication and judgment in the justice's court.

It is upon the correctness of this finding and conclusion of the court that the judgment appealed from depends.

Appellant does not dispute that if the items of this entire claim arose upon the same running account and that the entire amount was due and owing when the suit in the jus-

tice's court was begun, the failure to prosecute the entire claim in one action would be a bar to the subsequent suit on the remaining items of the account.  [1] It is clearly established that a party may not split up a single cause of action and make it the basis of several suits, and in such case the first action may be pleaded in abatement of any subsequent suit on the same claim.  (15 R. C. L., Judgments, sec. 440; *Van Horne* v. *Treadwell,* 164 Cal. 620, [130 Pac. 5]; *Bingham* v. *Kearney,* 136 Cal. 175, [68 Pac. 597]; *Bolen Coal Co.* v. *Whittaker Brick Co.,* 52 Kan. 747, [35 Pac. 810].)

It is appellant's contention that the evidence does not sustain the finding that there was but a single account involved in both suits.

[2] The defense was an affirmative one and the burden was on the defendant to establish it.  The only evidence supporting this defense was the showing that all of the items covered by the entire claim were for fish sold and delivered by plaintiff to defendant within two years prior to the first suit.  Conceding that this was sufficient as a *prima facie* showing that both claims arose on one open and running account, was it rebutted by the undisputed fact that plaintiff was carrying on his business in separate establishments, one at San Francisco and one at Monterey, and that the suit brought in the justice's court was for fish bought and delivered from the Monterey branch and the present action was for fish bought and delivered from the San Francisco house?

[3] We think there can be no question that where a single proprietor is conducting the same line of business in different towns and localities, operating them independently so far as dealing with customers is concerned, and keeping separate accounts as between the several branches of the business, that the liability of purchasers from one or the other constitutes a separate account, even though the same customer buys from more than one of the branches.  This must necessarily be so to keep any systematic check on the various branches of the business, and it would be an intolerable hardship on the proprietor to have to marshal the accounts of all his branch houses before he could press to judgment any one of them.  In the absence of controlling authority to the contrary we should be constrained to hold, as a matter of business policy, that for purposes of all dealings with his customers the proprietor is entitled to operate his branch houses as separate

and independent establishments, and our attention has been called to no authority to the contrary.

The citations in support of this contention, so far as they go, tend to uphold the doctrine.

The principle governing this matter is well illustrated in *Secor* v. *Sturgis,* 16 N. Y. 548, in which the same defense in abatement of a second action upon a single and indivisible claim was interposed. The plaintiff was a copartnership carrying on the business of ship carpenters and ship chandlers. The two branches of the business were operated in the same building but separately; one or more members of the firm conducting the carpenter business, and another the ship chandler business. They rendered services and furnished materials to the ship of defendant at the same time. It was held that there were two accounts which could be sued separately. The principle stated is that where the several items have their origin in one contract, as on an agreement to sell and deliver goods or perform services or advance money, it is a single cause of action, and that in the case of a running account it may be fairly implied that it is in pursuance of an agreement that an account may be opened and continued either for a period or at the pleasure of one of the parties. But there must be an express contract, or the circumstances must be such as to raise an implied contract, embracing all the items where they arise at different times in order to make a single demand or cause of action. The court in its opinion says: "Applying this test to the present case, it is very clear that the two accounts did not constitute an entire claim; but, on the contrary, that they were several and formed two several causes of action. The business of the plaintiffs consisted of two branches, which were designed to be and were kept entirely distinct, in each of which one of the accounts was made. . . . Here was no express contract connecting the two accounts; and the facts instead of warranting the presumption of such a contract show that separate agreements only, one in regard to each account, were intended." That the distinction here made was not based upon the different classes of service carried on in the two branches of the business is shown by the comment of the opinion upon another decision, where it is said: "In *Colvin* v. *Corwin,* 15 Wend. (N. Y.) 557, two suits were brought for lottery tickets sold defendant. On the trial of the first the defendant admitted he had

bought the tickets alleged to have been sold to him, and judgment was rendered for the plaintiff. The judgment was set up as bar in the second suit, and on the trial it appeared that the tickets claimed in the suits were delivered to the defendant by two different agents of the plaintiff, at different offices occupied by them, at different times, and it was held by the supreme court that the previous judgment was a bar to a recovery. It is manifest that this decision rests on no sound principle and is not law. A plainer case of distinct independent causes of action could hardly be presented.''

Other authorities cited recognizing the distinction here stated are: *Borngesser* v. *Harrison,* 12 Wis. 544, [78 Am. Dec. 757]; *Johnson* v. *Pirtle,* 1 Swan (Tenn.), 262; 1 Corpus Juris, 1113; 23 Cyc. 1178; *Cook* v. *Conners,* 215 N. Y. 175, [Ann. Cas. 1917A, 248, L. R. A. 1916A, 1074, 109 N. E. 78].

The rule is laid down in *Hall* v. *Susskind,* 109 Cal. 203, [41 Pac. 1012], that "It is only where a claim is founded upon one entire contract, or upon one single or continuous tortious act, that it cannot be divided into distinct demands and be made the subject of separate actions."

The difficulty in this case is that the evidence as to the manner in which the branches of plaintiff's business at San Francisco and Monterey were conducted and their relations to each other is very meager and unsatisfactory. Plaintiff's counsel made several attempts to show affirmatively that the accounts were kept separately and that the branch establishments were conducted independently of each other, but the evidence given to that effect was stricken out by the court as a statement of the conclusion of the witness. No exception is taken to the rulings of the court in excluding this evidence.

[4] We are inclined to the opinion, however, that the undisputed fact that plaintiff was operating these two branch houses, and that the account sued on in the justice's court was ordered and delivered from the Monterey branch, and the account sued on in the present action was ordered and delivered from the San Francisco branch, negatives any presumption of a single running account that might have arisen from the mere fact that the entire indebtedness was to a single creditor for the same line of goods throughout.

The account sued for was admittedly owing and unpaid, and the rule that every presumption should be most strongly applied in support of the judgment ought not to be pressed too far on a purely technical defense. **[5]** Pleas in abatement are not favored and should be subjected to strict construction both as to pleading and evidence. (*Thompson* v. *Lyon,* 14 Cal. 39; *California Sav. & L. Soc.* v. *Harris,* 111 Cal. 133, [43 Pac. 525]; *Reed & Co.* v. *Harshall,* 12 Cal. App. 697, [108 Pac. 719].) This is particularly true here in view of the fact that the court made no finding to indicate its attitude upon the effect of the separate branch houses upon the unity of the account. In fact, it may be inferred from the ruling upon the admission of evidence that the court did not attach any significance to the question as to whether the plaintiff was conducting separate branches of his business, or made part of the sales from one establishment and part from another. In sustaining an objection to a question by plaintiff's counsel to the treasurer of the defendant company in which he was asked if he did not know that plaintiff had different branches in different parts of the state, the court remarked that "It doesn't make any difference. They are all his and he is bound to know what goes on in every one of them." The court of appeal in affirming the judgment of the trial court evidently took the same position, disposing of this part of the evidence by the statement that "The goods were all ordered from plaintiff and the fact that he had different branches of his business from which a part of the goods were shipped in filling the defendant's orders is immaterial."

It is with this view of the law that we differ, and in the light of the fact that the subject matter of these separate suits arose on sales from different branches of the business at different localities, we hold that there could be no controlling presumption that they constituted but one account.

The judgment is reversed.

Lawlor, J., Shaw, J., Lennon, J., Olney, J., Wilbur J., and Angellotti, C. J., concurred.