## SEARS, ROEBUCK & CO. v. BLADE et al.

### No. 14079.

United States District Court
S. D. California, Central Division.

Feb. 16, 1953.

Nathan M. Dicker, Beverly Hills, Cal., for the defendants Metropolitan Engravers, Metropolitan Mat Service, and the Duffys and Smutz.

John L. Wheeler, Freston & Files and Eugene D. Williams, Los Angeles, Cal., for the plaintiff.

HALL, District Judge.

The defendants in the above entitled action are Frank R. Blade, an individual, alleged to have been an employee of the plaintiff from the years 1937 until December 1951 as Advertising Manager of the Los Angeles group of stores owned and operated by the plaintiff; Metropolitan Engravers, Ltd., and Metropolitan Mat Service, Inc., two California Corporations, the latter one of which is alleged to be wholly owned and controlled by the individuals Gregory F. Duffy, Aubrey A. Duffy, Alfred Smutz and Walter C. Duffy, who likewise are alleged to be the officers, agents and representatives of the corporation designated as Metropolitan Engravers, Ltd. Barnard Engraving Company, Inc., alleged to be a California corporation and James G. Barnard, Margaret Davis, John Doe, Jane Roe and John Doe Company, alleged to be officers, agents and representatives of the Barnard Engraving Company.

Frank R. Blade has answered.

No appearance seems to be in the file for either Barnard Engraving Co., or James G. Barnard or Margaret Davis.

Metropolitan Engravers and Metropolitan Mat Service, the three above-mentioned Duffys and Smutz have filed a motion to dismiss or for summary judgment, motion for more definite statement, motion for statement of each separate transaction, and a motion to strike.

Consideration will first be given to the motion to dismiss.

The complaint is in three causes of action:

The first cause of action is alleged to involve violations of the Anti-Trust Acts, 15 U.S.C.A. §§ 1, 4, 13(a) and 15, and jurisdiction is said to rest upon Title 15 U.S.C.A. § 15, and Title 28 U.S.C.A. § 1337; Section 15 of Title 15 being that provision of the Anti-Trust laws which gives the right to private suit for damages and Section 1337 of Title 28 gives jurisdiction in cases arising under the Federal laws regulating commerce.

The second cause of action is alleged to be founded upon violation of the Robinson-Patman Act, Title 15 U.S.C.A. § 13(a) and (c), and jurisdiction of the court is alleged to lie under Title 15 U.S.C.A. § 15, and Section 1337 of Title 28 U.S.C.A.

The third cause of action is based upon diversity only and seeks damages for alleged oppression and fraud, based upon the conduct of the defendants.

Summarily stated, the factual allegations in the complaint are these: that the defendant Blade was Advertising Manager from January 1, 1937 to December 1951 for the Los Angeles group of stores owned by plaintiff; that as such Advertising Manager he let contracts for engraving and mat service to the defendants, Metropolitan Engravers, Metropolitan Mat Service and Barnard Engraving Co.; that he received a cut-back of $400 a month for a period of time and 15% of the total price of mats and engravings at other times from Metropolitan Engravers, Metropolitan Mat Service and/or Barnard Engravers.

The plaintiff seeks in the first cause of action to recover the amount received by defendant Blade plus treble damages under the Sherman Act, 15 U.S.C.A. § 1; and in the second cause of action, an amount received in asserted violation of the Robinson-Patman Act, 15 U.S.C.A. § 13(a) and (c), plus treble damages; and in the third cause of action damages in the sum of $125,734.89 with an additional sum of $250,000 as exemplary or punitive damages from all defendants, and the sum of $18,093.04, plus $50,000, as exemplary or punitive damages from the defendants Blade and Barnard Company, as well as for attorneys' fees, costs, etc.

The only matters before the court now are the motions of Metropolitan Engravers, Metropolitan Mat Service, the above-mentioned Duffys and Smutz.

If it does not appear from the complaint that the acts and conduct set forth come within the provisions of the Sherman Act, the motion to dismiss must be granted as

to the first cause of action. And if it does not appear from the complaint that the acts and conduct complained of are prohibited by the Robinson-Patman Act, the motion to dismiss the second cause of action must be granted.

The allegations concerning interstate commerce by which the plaintiff seeks to bring itself under the Sherman Act are not too extensive and briefly summarized they are: that in the course and conduct of plaintiff's business its Los Angeles group of stores engaged extensively in newspaper advertising of, and concerning the commodities which it markets and sells; that a large number of engravings and mats were designed to be, and were actually used, in newspaper advertising of said commodities; that said engravings and mats were used in newspaper advertisements in the Los Angeles Times, Los Angeles Examiner and other newspapers which are distributed not only in the State of California but throughout the several states of the Union, including particularly the states of Arizona and Nevada; "That in the course of said business of plaintiff and said defendants there is a constant, continuous stream of trade and commerce between the states consisting of the purchase, transportation, sale, soliciting for sale, advertising and delivering of commodities which are bought and sold by plaintiff and into which the engravings manufactured and sold to plaintiff by said defendants enter as a part of the over-all operation of buying, selling, advertising, transporting and delivering such commodities between the several states."

In short, the plaintiff asserts jurisdiction and liability under the Sherman Act in that it is engaged in interstate commerce and in that advertising is a part of that interstate commerce and that the advertising goes in the newspapers, which are, in turn, distributed in interstate commerce.

The question of what constitutes interstate commerce as that term is used in the Sherman Act, has been before the courts upon innumerable occasions and with a great variety of results. So much so that it is difficult, if not impossible, to find among the reported cases any readily definite standard or norm, but on the contrary each specific situation depends in the ultimate for its solution upon the particular facts surrounding such situation. For that reason it is almost useless to review the innumerable cases which have touched upon the great variety of circumstances which have been before the courts in litigation under the Sherman Act. There are, however, certain principles enunciated in the decisions which serve as something of a guide to the courts of first resort. Counsel have cited numerous cases in the briefs, but it is unnecessary for the purpose of decision to refer to all of them in this memorandum.

It is now recognized that the Sherman Act is applicable not only to "trade or commerce among the several States" but also to such trade or commerce, even though wholly intrastate in character, which may affect trade or commerce among the several states. But whether or not such intrastate activities come within the ambit of the Sherman Act is determined by the effect the particular acts may have upon commerce among the states. This latter principle is best enunciated in Apex Hosiery Co. v. Leader, 1940, 310 U.S. 469, 60 S.Ct. 982, 996, 84 L.Ed. 1311, in the following language:

"In the cases considered by this Court since the Standard Oil [Co. v. U. S.] case [221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619] in 1911 some form of restraint of commercial competition has been the *sine qua non* to the condemnation of contracts combinations or conspiracies under the Sherman Act, and in general restraints upon competition have been condemned only when their purpose or effect was to raise or fix the market price. It is in this sense that it is said that the restraint, actual or intended, prohibited by the Sherman Act are only those which are so substantial as to affect market prices. Restraints on competition or on the course of trade in the merchandising of articles moving in interstate commerce is not enough, unless the re-

straint is shown to have or is intended to have an effect upon prices in the market or otherwise to deprive purchasers or consumers of the advantages which they derive from free competition. Chicago Board of Trade v. United States, 246 U.S. 231, 238, 38 S.Ct. 242, 243, 62 L.Ed. 683; United States v. United States Steel Co., 251 U.S. 417, 40 S.Ct. 293, 64 L.Ed. 343; Cement Manufacturers Ass'n v. United States, 268 U.S. 588, 45 S.Ct. 586, 69 L.Ed. 1104; United States v. International Harvester Co., 274 U.S. 693, 47 S.Ct. 748, 71 L.Ed. 1302; Appalachian Coals v. United States, 288 U.S. 344, 375, et seq., 53 S.Ct. 471, 479, et seq., 77 L.Ed. 825."

■ In Feddersen Motors, Inc. v. Ward, 10 Cir., 1950, 180 F.2d 519, the court held that mere injury or damage to a plaintiff only was not enough, but that a complaint must allege violation of the Act in form of undue restriction or obstruction of interstate commerce and damages to plaintiff proximately resulting therefrom, and must also allege facts from which it can be determined as a matter of law that by reason of intent, tendency, or the inherent nature of the contemplated acts, an alleged conspiracy was reasonably calculated to prejudice public interests by *unduly restricting the free flow of interstate commerce*. And further, that an *appreciable part of such commerce* must be the subject of a monopoly complaint or conspiracy.

In Brosious v. Pepsi-Cola Co., D.C.Pa., 1945, 59 F.Supp. 429, it was held that restraints, actual or intended, prohibited by the Sherman Anti-Trust Act are only those which are so substantial as to affect market prices, and that restraints on competition or on the course of trade and merchandising of articles moving in interstate commerce are not illegal under the Sherman Act unless the restraints are shown to have, or intended to have an *affect on prices in the market* or *otherwise deprive purchasers or consumers* of advantages which they derive from free competition. This case was affirmed by the Third Circuit in 155 F.2d 99, on other grounds but the last sentence of that opinion is illuminating, 155 F.2d at

page 104, "Taken as a whole the action appears to be based upon a *private controversy* rather than upon one affecting the public as such, *a necessary element* of the laws which are herein attempted to be invoked." (Italics supplied.)

■ In Abouaf, v. J. D. & A. B. Spreckels Co., D.C.N.D.Cal.1939, 26 F.Supp. 830, it was held that the right of action in an individual was incidental and subordinate to the main purpose of the Anti-Trust Laws which are to provide protection for the public from monopolies and restraint of trade, and that violation of public right must be shown contrary to the Act. It was also held that in order to recover damages under the Sherman Anti-Trust Acts the effect upon interstate commerce must be direct and not remote and must be the result of an intent to restrain interstate commerce, or there must be a substantial and actual restraint of interstate commerce and any conspiracy which only indirectly or incidentally affects and restrains interstate commerce is not within the purview of the Anti-Trust Acts and that an incidental effect on interstate commerce cannot be reached under the Anti-Trust Acts.

■ Applying the principles enunciated in the foregoing cases, which I deem to be controlling here, the complaint is searched in vain for any allegations of intent to restrain interstate commerce, or for any allegations concerning an effect upon interstate commerce by any actual restraint or tendency to monopoly. It is not alleged that any of the commerce of the newspapers in which the advertisements were placed, was restrained or affected, nor does it appear how the plaintiff's business was restrained or affected, so far as any benefits of competition which the public may receive in prices and goods sold by the plaintiff are concerned. No allegation is made that the prices paid by the public to the plaintiff in its various stores, were affected in the slightest by the acts and conduct of the moving defendants as set forth in the complaint. The first cause of action is wholly barren of any allegations that the action of the defendants in paying the kick-backs to Blade resulted in any discrimination of the price at which moving defendants sold

mats to Sears and other customers. While the sums sought are large, they cannot be said to be so substantial compared to the gross business of plaintiff, which the court judicially notices to be many hundreds of millions of dollars over the fifteen-year period involved. Whatever effect the conduct of the defendants had on either the business of the plaintiff or on the newspapers, it was too remote, incidental, speculative and vague to come within the provisions of the Sherman Act.

The long and short of it is that the complaint seeks to come within the ambit of the Sherman Act because the defendant Blade, by a course of alleged conduct with the moving defendants, committed what amounts in the long run, to the equivalent of either embezzlement or just plain theft. If the provisions of the Sherman Act are to be extended to permit treble damages to a company engaged in interstate commerce because of theft or misappropriation of money from it by its employees, such principle extending the Act will have to be announced by a court other than this one.

The first cause of action does not meet the tests set down in the foregoing cases.

Plaintiff relies upon Lorain Journal Co. v. United States, U.S.D.C.Ohio, 1951, 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162, in support of its position that the first cause of action comes under the Sherman Act. The allegations of the complaint here are entirely different from the situation which existed there. In that case there was a direct attempt by a newspaper which was engaged in business in interstate commerce to destroy a radio station which was also engaged in interstate commerce. But to make the Lorain case applicable here there would have to be allegations to the effect that the conduct of the moving defendants somehow or another restrained or affected the business of the newspapers, which the plaintiff alleges were sent in interstate commerce, or tended to monopolize or restrain the business of plaintiff.

For the same reason the Greenspun case, infra, is not applicable, Greenspun v. McCarran, D.C.Nev., 1952, 105 F.Supp. 662.

Sunbeam Corp. v. Wentling, 3 Cir., 1950, 185 F.2d 903, holds that advertising placed in another state with a national publication is interstate commerce, a situation not existing here by the allegations of the complaint.

The motion to dismiss plaintiff's first cause of action should be, and is, ordered granted.

Coming now to plaintiff's second cause of action:

This cause of action alleges violation of the Robinson-Patman Act, 15 U.S.C.A. § 13(a) and (c) and jurisdiction therefor is based upon 15 U.S.C.A. § 15, and 28 U.S.C.A. § 1337.

Section 15 of Title 15 U.S.C.A. grants jurisdiction to the District Courts in suits by any person who shall be injured in his business or property by reason of anything forbidden in the "Anti-Trust Laws." The Robinson-Patman Act is a part of the Anti-Trust Laws, Spencer v. Sun Oil Co., U.S. D.C.Conn., 1950, 94 F.Supp. 408. If, therefore, there is a violation of either Section 13(a) or 13(c) of Title 15 U.S.C.A. this court has jurisdiction.

But there is a distinction between the commerce which is covered by the Sherman Act, 15 U.S.C.A. § 1, and the Robinson-Patman Act, 15 U.S.C.A. § 13(a) and (c). As said in Lewis v. Shell Oil Co., D.C.Ill., 1943, 50 F.Supp. 547, at page 549:

"In an action brought under the Robinson-Patman Act it is necessary to allege and prove that the transactions complained of are actually in interstate commerce, while in actions brought under the Sherman Anti-Trust Act it is sufficient if the transactions complained of are shown to have affected interstate commerce."[1]

The applicable portion of Section 13(a) of Title 15 U.S.C.A., provides: "It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases in-

---

1. Spencer v. Sun Oil Co., supra, holds to the same effect.

volved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession * * * and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them: * * *."

Section 13(c), Title 15 U.S.C.A., in its applicable part, provides: "It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid."

To come within the prohibitions of Section 13(a) the person from whom damages are sought, in this instance, Metropolitan Engravers, Metropolitan Mat Service, the Duffys and Smutz, must be engaged in interstate commerce and the acts of such discrimination must be substantially to lessen competition or tend to create a monopoly in any line of commerce or injure or destroy or prevent competition. The complaint is entirely barren of any allegation that the moving defendants are engaged in the course of interstate commerce. No allegations are present which show that the moving defendants either received or shipped any goods in interstate commerce and the only hope of the plaintiff to bring them within the terms of Section 13(a) is their allegation that their acts affected interstate commerce only indirectly and then "as a part of the over-all operation" of the plaintiff. Nor is there any allegation in the complaint to show that the effect of the misconduct of the defendants was to substantially lessen competition or tended to create a monopoly in any line of commerce. What has been hereinbefore said with relation to the first cause of action is equally applicable to the second cause of action.

No cause of action is stated under Section 13(a).

As heretofore pointed out, Section 13(c) likewise provides for liability only in the event a charged defendant is engaged in interstate commerce. And as just above set forth, the complaint is wholly lacking in allegations to that effect.

Plaintiff places great reliance upon Fitch v. Kentucky-Tennessee Light & Power Co., 6 Cir., 1943, 136 F.2d 12, 149 A.L.R. 650, and upon Allgair v. Glenmore Distilleries Co., U.S.D.C.N.Y., 1950, 91 F.Supp. 93, and Southgate Brokerage Co. v. Federal Trade Commission, 4 Cir., 1945, 150 F.2d 607, but I do not think these cases are applicable to the present transaction as in each of them there was no question but what the defendants were engaged in interstate commerce. In the Fitch case, supra, both the Kentucky-Tennessee Light & Power Co., of which Fitch was its former President, and the Nashville Coal Company were admittedly engaged, the first in the transportation of power across state lines in substantial quantities, and the second in the shipment of coal which, under the contracts involved, was to be the entire supply of coal for the Power Company and was to be mined in Kentucky and Tennessee and shipped to the various plants of the coal company situated in various states, or the coal company might ship from any other mines for which it might be acting as agent. In the Allgair case no question was raised as to whether or not the plaintiffs or defendants were engaged in interstate commerce. Nor was the question raised in the Southgate Brokerage Co. case., supra. Indeed it appears that the Brokerage Company did a large business interstate.

For the foregoing reasons no cause of action was stated under Section 13(a) or

(c) of the Robinson-Patman Act and the motion to dismiss is ordered granted.

Coming now to the third cause of action:

The plaintiff incorporates in the third cause of action the allegations contained in Paragraphs II, III, IV, V, VI, VII and VIII of plaintiff's first cause of action and Paragraph XII of plaintiff's second cause of action.

Section 17045 of the Business and Professions Code of California makes it unlawful to make secret payments or allowances or rebates and the like. So that if the allegations of the third cause of action otherwise meet the assaults upon it by the moving defendants, the motion to dismiss that cause of action should not be dismissed.

Paragraph III of plaintiff's first cause of action contains the allegations to support the charge of violation of the Sherman Act and the Robinson-Patman Act, which, as above pointed out, cannot be done. I therefore treat the third cause of action as one to recover money taken from it by the defendants by fraud. Thus treated, jurisdiction of this court arises under diversity provisions of Title 28 U.S.C.A. § 1332(a) (1). Hence the allegations of Paragraph III are redundant and immaterial and should be, and are, ordered stricken, as is also the last sentence of Paragraph XII, lines 5 to 7, page 9 of the Complaint.

The California Statute of Limitations is applicable and controlling, Prentiss v. McWhirter, 9 Cir., 1933, 63 F.2d 712, and Levy v. Paramount Pictures, U.S.D.C., N. D.Cal.1952, 104 F.Supp. 787. See also Burnham Chemical Co. v. Borax Consolidated, 9 Cir., 1948, 170 F.2d 569, at page 576.

In my judgment, however, the complaint does not comply with the Federal Rules of Civil Procedure, 28 U.S.C.A., in connection with the allegations of fraud and the discovery thereof so as to bring the plaintiff within the period of the statute of limitations. Particularly is this true in view of the allegation that the conduct of defendants is alleged to extend over a continuous period of fifteen years. It is alleged the conspiracy existed from 1937 to 1951 but that prior to October 1949 defendant Blade was instructed by the plaintiff to contract for part of the engraving with firms other than the Metropolitan Engravers and that he thereafter entered into contracts with the Barnard Company, but upon a similar arrangement for secret profit or commission.

In the Prentiss case, supra, it was said that where fraud is alleged to have been perpetrated over three years before the commencement of the action the plaintiff must not only allege that the fraud was not discovered until within three years, but must also allege the circumstances of discovery which would show the plaintiff's failure to discover the fraud was excused; what particular discovery of fraud was made, when the discovery was made, and why it was not made sooner. None of these requirements are met by the simple allegation contained in Paragraph XVI of plaintiff's complaint in the third cause of action to the effect that plaintiff had no knowledge of the acts complained of prior to December 1951, and did not discover them until that date. Furthermore, the defendants assert that each contract would constitute a separate conspiracy. The statute of limitations began to run, not upon the occurrence or because of the conspiracy, but upon the occurrence and because of damage to plaintiff, which would at least be upon the occasion of each separate contract for mats or engravings. Good pleading would require the plaintiff to set forth the date of each contract and the amount involved. Suckow Borax Mines v. Borax, Consolidated, 9 Cir., 1950, 185 F.2d 196; Foster & Kleiser Co. v. Special Site-Sign Co., 9 Cir., 1936, 85 F.2d 742.

For the foregoing reasons the motion of the moving defendants to dismiss the complaint as to them on the first and second causes of action is ordered granted; the motion to dismiss the third cause of action is denied; the motions of the defendants to make more definite and certain are granted. The motion for summary judgment is denied. The motion to strike is granted as to the portions hereinbefore indicated.

, Plaintiff will have thirty days to amend as to the third cause of action, failing which the court will entertain a motion of the defendants to dismiss the third cause of action.

In the meanwhile, in order that the conclusions herein may be tested on appeal, the defendants will prepare a final judgment of dismissal of the first and second causes of action and submit the same under the rules.