**SEARS, ROEBUCK & CO.**

v.

**BLADE et al.**

**Civ. No. 14079.**

United States District Court
S. D. California, Central Division.

June 29, 1954.

**132**

John L. Wheeler, Freston & Files and Eugene D. Williams, Los Angeles, Cal., for plaintiff.

Knudson, Wolfe & Knudson and Tobias G. Klinger, Los Angeles, Cal., for defendant Blade.

Nathan M. Dicker, Beverly Hills, Cal., for other defendants.

HALL, District Judge.

The original complaint in this matter was filed on May 2, 1952. It was in three causes of action: the first for alleged liability under the Sherman Act, 15 U.S.C.A. §§ 1–7, 15 note; the second for alleged liability under the Clayton Act, 15 U.S.C.A. § 12 et seq., and the third a count for damages for fraud.

Upon motions to dismiss, an order was made granting the motion to dismiss without leave to amend as to the first and second causes of action and granting the motion to dismiss as to the third cause of action with leave to amend. See Sears, Roebuck v. Blade, D.C., 110 F. Supp. 96. After the filing of that memorandum, in February 1953, appeal was taken by the plaintiffs but later abandoned, and on August 21, 1953, the plaintiff filed an amended complaint for damages for fraud in one cause of action.

The matter is before the court on a motion for summary judgment by defendant Blade, and on motions of the other defendants to dismiss or in the alternative for summary judgment.

By its amended complaint the plaintiff seeks to recover damages for fraud from Blade (its former employee for many years), Metropolitan Engravers, Ltd., a corporation, Metropolitan Mat Service, Inc., another corporation, Gregory F. Duffy, Aubrey A. Duffy, and Walter Duffy, and Alfred Smutz, officers and directors of those two corporations and Barnard Engraving Company, Inc., a corporation, and James G. Barnard and Margaret Davis, alleged to be the officers, agents and representatives of the Barnard Company.

The substance of the plaintiff's cause of action is alleged to be as follows: defendant Blade was employed by the plaintiff in the capacity of Advertising Manager for what it refers to as its Los Angeles Group of stores; as part of his duties as such Advertising Manager, he was required to negotiate and contract for the engraving of material which was to be used, and was used, by the plaintiff in connection with its advertising in newspapers; that from January 1, 1937, until the month of December, 1951, defendant Blade entered into and executed many contracts with the defendant Metropolitan Engravers, which company, in turn, manufactured engravings which were sold to, and used by, the plaintiff in its newspaper advertising; that throughout the entire period the defendant Metropolitan Engravers and its officers and agents "secretly, fraudulently, unfairly and deceptively conspired and agreed that the defendants 'Engravers' and 'Mat Service' would pay to, and the defendant Frank R. Blade would receive and accept secret, fraudulent, unfair and deceptive rebates, profits or commissions in the sum of $400.00 per month in consideration of which said defendant Blade would contract for all engraving to be purchased by the Los Angeles Group of

stores owned and operated by plaintiff with said defendant 'Engravers' and no other person, firm or corporation, and would permit them to charge and would procure plaintiff to pay them sums of money greatly in excess of the then going price for identical quantities of identical or similar engraving current in the Los Angeles market and at prices substantially in excess of the prices which plaintiff would have been charged by competitors of defendants for like quantities of engraving of like grade and quality. In particular it was agreed between said defendants that plaintiff would be charged and would pay to said defendant 'Engravers' sums of money based upon varying basic prices of $.033 to $.044 per unit of engraving, although the fair market price in the Los Angeles area and the prices concurrently charged other purchasers in said area who were competitors of plaintiff for like quantities of engraving of like grade and quality was $.030, or less; and that, for extra work in connection with such engraving not included in such unit price, equivalent additional charges over and above the fair market price for such extra work would be made by defendant 'Engravers' and paid by plaintiff."

It is further alleged in the complaint that prior to October 31, 1949, defendant Blade was instructed by plaintiff to contract for part of the engraving for the Los Angeles Group of stores with engraving firms other than the defendant Metropolitan Engravers; that thereupon the defendants and each and all of them further contracted and agreed among themselves that the engraving business of the plaintiff should be divided between the defendant Metropolitan Engravers and the Barnard Company, and that no other person, firm or corporation should be allowed or permitted to secure any such business; that the base price would be $.044 per unit "and not at the fair market price in the Los Angeles area of $.030, or less". It is also alleged that the Barnard Company and James G. Barnard and Margaret Davis also agreed to pay Blade a secret profit amounting to 15% of the gross amount of all moneys received from plaintiff for engraving done by the Barnard Company. It is further alleged that said agreements were carried out and executed by the defendants. The complaint has attached to it a list of payments beginning February 6, 1942 to November 29, 1951, and alleges that the total amount paid for engraving during that period was the sum of $563,504.50; that the fair market value was the sum of $141,979.95 less than the total figure. It is also alleged that the dates and amounts of purchases of engravings made by plaintiff from defendant Engravers during the period of time from on or about January 1, 1937, until on or about February 5, 1942, and the total amount so charged by defendants and paid by the plaintiff during that period are unknown to the plaintiff. It is alleged that the difference between the fair market value and the amount paid by plaintiff to Barnard Co. was the sum of $20,021.50.

The plaintiff then alleges that the total amount received by Blade from the Metropolitan Engravers and Metropolitan Mat Service was a sum in excess of $50,000 and the amount paid to Blade by the Barnard Co. was $8,250.

The circumstances of the discovery of fraud are alleged to be that all of the acts and agreements and conduct of the defendants, above described, were unknown to the plaintiff until on or about the 10th day of December, 1951; that on or about the 6th day of July, 1951, plaintiff received an anonymous letter to the effect that some unidentified person who was engaged in purchasing for the plaintiff was engaged in receiving secret payoffs. The letter did not identify the party charged, but the letter caused the plaintiff to investigate those engaged in purchasing, which resulted in the discovery by them, on or about the 10th day of December, 1951, of the acts and conduct upon which it bases its claim for relief. The complaint seeks actual damages totaling $162,001.45, and $250,000 as exemplary or punitive damages.

Defendant Frank R. Blade has answered with the usual denials; and alleges that all claims prior to May 2, 1949, are barred by the statute of limitations of California, Code Civ.Proc. § 339(1), and that all acts prior to May 2, 1948, are barred by the provisions of Section 338 of the California Code of Civil Procedure; that all claims are barred by laches on the part of the plaintiff; and as a separate defense alleges in his sixth additional defense that prior to the filing of the Amended Complaint herein on August 21, 1953, and prior to the filing of the original complaint herein on May 2, 1952, and to-wit: on December 10, 1951, the plaintiff filed a complaint for money had and received in the Superior Court of the State of California in and for the County of Los Angeles, wherein the plaintiff herein was plaintiff therein and the defendant Frank R. Blade and Nella Blade were defendants; that the plaintiff in that case secured a writ of attachment under the provisions of Section 537 of the Code of Civil Procedure of the State of California and caused the same to be levied by the Sheriff of Los Angeles County; that in response to a demand for a bill of particulars, Sears, Roebuck filed a bill of particulars which contains, in substance, the same charges contained in the complaint herein, and that by the filing of the Superior Court action the plaintiff made an election of remedies, resulting in damage or injury to the defendant Blade and that by virtue of such election of remedies, the plaintiff is estopped from maintaining the instant suit against Frank R. Blade.

The motion of defendant Blade for summary judgment will be considered before discussing the motions of the other defendants.

Blade's motion for summary judgment is based upon the ground that plaintiff is estopped from asserting tort liability against him, in that plaintiff, by its suit and attachment in the Superior Court, made a decisive election of remedies.

■ The motion is based on the pleadings, including the verified answer of Blade and the affidavit of Mr. Knudson, which, in substance, contains all the factual matters set forth in the sixth separate defense of Blade. The facts therein alleged are undenied; they are material. There is thus no genuine issue as to them, which postures the case for summary judgment as to Blade, under Rule 56, F.R.C.P., 28 U.S.C.A., if, as matter of law, the suit and attachment in the State Court constitute such an election of remedy by the plaintiff as to estop it from pursuing the within action for alleged torts of Blade. Miller v. Hoffman, D.C., 1 F.R.D. 290.

■ The mere pursuit of a remedy does not necessarily estop a party from pursuing another inconsistent remedy. It frequently occurs that the remedy first pursued by a wronged party develops into no remedy at all, that is to say, it develops after trial, and even after appeal, that the plaintiff never had such a right or remedy to recover. An election of remedies presupposes the existence of two *valid* remedies. If one turns out not to be valid, a plaintiff cannot be held to have made an election, because one cannot choose to have that to which he is not entitled. As said in Bierce v. Hutchins, 205 U.S. 340, 347, 27 S.Ct. 524, 525, 51 L.Ed. 828, "It does not purport to be a choice, and it cannot be one, because the party has no right to choose." Barnsdall v. Waltemeyer, 8 Cir., 1905, 142 F. 415, certiorari denied 201 U.S. 643, 26 S.Ct. 759, 50 L.Ed. 902; Southern Pacific Co. v. Bogert, 1919, 250 U.S. 483, 39 S.Ct. 533, 63 L.Ed. 1099; Rankin v. Tygard, 8 Cir., 198 F. 795; Brown v. Fletcher, 6 Cir., 1910, 182 F. 963, certiorari denied 220 U.S. 611, 31 S.Ct. 715, 55 L.Ed. 609.

■ It is, however, also a settled proposition of law that where a person has two inconsistent remedies and pursues one, and by it gains an advantage over the other party, or causes him damage, then an election is deemed to have been made which operates as an equitable estoppel from pursuing another and different remedy. It is this doctrine upon which the defendants rely.

There are two necessary elements to this rule: (1) the remedies must be inconsistent, and (2) their first remedy pursued must result in disadvantage, damage, or detriment to the other party. De Laval Pac. Co. v. United Cleaners' & D. Co., 1924, 65 Cal.App. 584, 586, 224 P. 766.

The suit in the superior court was for money had and received—it is ex contractu; the suit here is ex delicto. They are inconsistent. Equitable Trust Co. of New York v. Connecticut Brass & Mfg. Corp., 2 Cir., 1923, 290 F. 712; Steiner v. Rowley, 1950, 35 Cal.2d 713, 720, 221 P.2d 9; Philpott v. Superior Court, 1934, 1 Cal.2d 512, 520, 36 P.2d 635, 95 A.L.R. 990; McCall v. Superior Court, 1934, 1 Cal.2d 527, 531, 36 P.2d 642, 95 A.L.R. 1019. A writ of attachment will issue under California Code Civ.Proc. § 527, in an action ex contractu, but not one ex delicto, which alone is a sufficient mark of inconsistency. As said in Hallidie v. Enginger, 1917, 175 Cal. 505, 508, 166 P. 1, 2:

> "Next, let it be remarked that the common-law distinctions between actions *ex contractu* and actions *ex delicto* have not been changed by the permission to file rambling pleadings containing averments pertaining to both classes of actions, and even averments addressed to equity alone. And, finally, let it be remembered that our statute, and statutes like ours, grant a writ of attachment only in cases *ex contractu*, and therefore deny it, both in actions *ex delicto* and in actions where equitable relief as such is sought."

The second necessary element for estoppel by election is also present here, i. e., securing an advantage in the state suit by getting the writ of attachment. Steiner v. Rowley, supra; Estrada v. Alvarez, 1952, 38 Cal.2d 386, 240 P.2d 278.

In the Steiner case, supra, the complaint was in four counts, one of which was for money had and received and another for fraud for secret profits by an agent of the plaintiff. An attachment was secured. The court said, 35 Cal.2d at page 720, 221 P.2d at page 13, "* * * the Steiners also obtained an attachment. This was a positive act of a plaintiff 'in pursuit of * * * (the contractural remedy) * * * whereby he has gained * * * advantage over the other party * * *.' De Laval Pac. Co. v. United C[leaners] & D. Co., 65 Cal.App. 584, 586, 224 P. 766, 767. The Steiners were thereafter estopped to allege a cause of action in tort, and the demurrer as to the fourth count [the tort count] was properly sustained."

In the Estrada case, supra, the court stated, 38 Cal.2d at page 391, 240 P.2d at page 281, "As previously stated, plaintiffs pray, in the alternative, for damages for fraud. Their original complaint attempted to state a cause of action for damages for breach of contract. (This attempt has been abandoned.) In pursuit of this contract remedy plaintiffs obtained an attachment. They are, therefore, estopped to pursue the tort remedy of damages for fraud."

The plaintiff contends, however, that the doctrine of the above cases does not apply; asserting that the state court action was one to recover secret profits received by Blade in which the measure of damages was the amount of money received by him, whereas, here, the measure of damages is the detriment caused by the fact that Blade entered into the fraudulent agreements with his codefendants and carried them out. No authority is cited in support of this contention.

The money received by Blade and sought to be recovered in the state court is part of the damages sought to be recovered in the instant action. The plaintiff has an attachment on Blade's property to secure its judgment in the state court if it obtains one. It has not dismissed the state action or released the attachment.

From the allegations of the complaint and from the undenied pleadings filed in the state action, it appears that the acts of Blade with the defendants here, constituted *one* continuous wrong; and that the *acts* of *Blade* and the *acts* of his co-

defendants in this case, were the basis of the suit in the state court. This is the only conclusion which can be reached from reading the pleadings in the within action and in the state court action, but it is emphasized by the following statements of the verified bill of particulars filed by the plaintiff in the state action:

"Secret profits received by Defendant Frank R. Blade for and on account of Sears, Roebuck and Co. but not accounted for or paid over to said company as follows:

"(a) Sums amounting to Four Hundred Dollars ($400.00) per month received by Frank R. Blade from January, 1937 to October, 1951, inclusive, a period of one hundred sixty-six months, from Metropolitan Engravers, Ltd., a corporation, and Metropolitan Mat Service, Inc., amounting to Sixty-Six Thousand, Four Hundred Dollars ($66,400.00).

"(b) Sums received from Barnard Engraving Company (formerly known as Barnard-Quinn Co.) during the period from September, 1949 to and including November 1, 1951, amounting to Eight Thousand, Five Hundred Eleven and 50/100 Dollars ($8,511.50)."

These are the *same acts* which plaintiff relies on in the instant suit. The plaintiff seeks in this action to recover the identical money as it seeks to recover in the state court action. While it seeks a greater sum of damages here than there, I cannot see how a different measure of damages for the same acts can create a right to two inconsistent remedies for those acts where, as here, the plaintiff by suit ex contractu in the state court waived the tort. The essence of the cause of action in both suits is the violation of the primary right which the plaintiff had to honest dealings by both Blade and his codefendants here. It constituted a single cause of action.

As stated by the Supreme Court of California in Wulfjen v. Dolton, 1944, 24 Cal.2d 891, at page 895, 896, 151 P.2d 846, at page 849, "The violation of *one* *primary right* constitutes a single cause

of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other."

By electing to sue ex contractu in the state court the plaintiff waived the tort by Blade, and one cannot waive half a tort by suing in contract and then sue in another case for the other half of the tort. When one sues ex contractu, whether on an express or implied contract, the bringing of that suit affirms the contract. It is the essence of the plaintiff's cause of action in the within case that it disaffirms and disavows the acts of Blade in letting contracts and receiving money from his codefendants; it is the essence of the plaintiff's cause of action in the state court that the defendant Blade was under the obligation of an implied contract to pay over to the plaintiff all moneys that he received.

In Robb v. Vos, 1894, 155 U.S. 13, at page 41, 15 S.Ct. 4, at page 13, 39 L.Ed. 52, the court stated as follows:

"Thompson v. Howard, 31 Mich. 309 [312], was a case where a father had brought an action of assumpsit for a minor son's wages, and, after the jury disagreed, had discontinued the suit, and brought an action for the unlawful enticing away and harboring the son. The supreme court said: 'A party may not take contradictory positions; and where he has a right to choose one of two modes of redress, and the two are so inconsistent that the assertion of one involves the negation or repudiation of the other, his deliberate and settled choice of one, with knowledge or means of knowledge of such facts as would authorize a resort to each, will preclude him thereafter from going back and electing again. * * * The plaintiff's proceeding necessarily implied that the defendant had the young man's services during the time *with the plaintiff's assent,* and this was absolutely repugnant to the foundation of this suit, which is that the young man was drawn away and

into defendant's service *against the plaintiff's assent.'*

"In Conrow v. Little, 115 N.Y. 387, 22 N.E. 346 [5 L.R.A. 693], at pages 393 and 394, of 115 N.Y., and page 347, of 22 N.E., the court said: 'The contract between Branscom and the plaintiffs was, upon the discovery of Branscom's fraud, voidable at their election. As to him the plaintiffs could affirm or rescind it. They could not do both, and there must be a time when their election should be considered final. We think that time was when they commenced an action for the sum due under the contract, and, in the course of its prosecution, applied for and obtained an attachment against the property of Branscom as their debtor. They then knew of the fraud practiced by him, and disclosed that knowledge in the affidavit on which the attachment was granted, and became entitled to that remedy, because it was made to appear that a cause of action existed in their favor by reason of "a breach of contract to pay for goods and money loaned obtained by fraud." The attachment was levied and the action pending when the present action, which repudiates the contract, and has no support except on the theory of its disaffirmance, was commenced. The two remedies are inconsistent. By one, the whole estate of the debtor is pursued in a summary manner, and payment of a debt sought to be enforced by execution; by the other, specific articles are demanded as the property of the plaintiff. One is to recover damages in respect of the breach of the contract, the other can be maintained only by showing that there was no contract. After choosing between these modes of proceeding, the plaintiffs no longer had an option. By bringing the first action, after knowledge of the fraud practised by Branscom, the plaintiffs waived the right to disaffirm the contract, and the defendants may justly hold them

to their election. The principles applied in [Equitable Co-Operative] Foundry Company v. Hersee, 103 N.Y. [25] 26, 9 N.E. 487, and Hays v. Midas, 104 N.Y. 602, 11 N.E. 141, require this construction, for the present contains the element lacking in those cases, viz. knowledge of the fraud practiced by the vendee, and, by reason of it, the plaintiffs were put to their election.

"'It is not at all material to the question that the plaintiffs discontinued the first suit before bringing the present to trial; for it is the fact that the plaintiffs elected this remedy, and acted affirmatively upon that election, that determines the present issue. Taking any steps to enforce the contract was a conclusive election not to rescind it on account of anything known at the time. After that the option no longer existed, and it is of no consequence whether or not the plaintiffs made their choice effective.'"

The plaintiff cannot ratify half of the acts of Blade in dealing with his codefendants by suit and attachment, where those acts are indivisible, as here, then sue in this court ex delicto not only for that half but as well for the additional half. So far as Blade is concerned he had one single indivisible obligation to his employer. He violated that obligation according to the complaint here and in the state court. The plaintiff was confronted with making a decisive choice—it could sue Blade ex contractu and attach his property, thus securing itself by that attachment for any judgment it might ultimately get, and assuring itself thereby that it would get something back from Blade for his wrong to it before Blade could sequester the property—or it could forego that right and sue him ex delicto and take its chances on ever collecting a judgment. It was a choice with which every lawyer is confronted; whether to take the bird in hand by attachment, or try to get two birds in the bush by a fraud action. It chose to take the bird in hand. It was a knowing choice with

its advantage of attachment. The law says it was a decisive choice. And the law will not permit it to pursue both choices at the same time merely because by a fraud action it may be more nearly able to recoup a greater sum than in the ex contractu action.

By the allegations in the complaint in this action and the complaint and bill of particulars in the state action, Blade and his codefendants here joined in a single wrong, namely, fraud upon the plaintiff, which the plaintiff elected to waive by bringing the state action. It cannot now split its causes of action into several suits. Robb v. Vos, supra; Paladini v. Municipal Markets Co., 1921, 185 Cal. 672, 200 P. 415; Nightingale v. Scannell, 1855, 6 Cal. 506, at page 509; Herriter v. Porter, 1863, 23 Cal. 385, at page 387; Van Horne v. Treadwell, 1913, 164 Cal. 620, at page 622, 130 P. 5; Grain v. Aldrich, 1869, 38 Cal. 514, at page 519.

The defendant Blade is entitled to summary judgment on his motion and that will be the order of the court.

The Metropolitan Mat Service has filed a separate motion to dismiss which is based upon the contention that it is alleged in the plaintiff's amended complaint that the Mat Service, in joining in the payment of money to the defendant Blade, acted as the agent of Metropolitan Engravers, Ltd. Taking the complaint as a whole, it alleges that all of the parties acted together in making the agreements and doing the things which are alleged to have been done in carrying out the unlawful agreements. I, therefore, can see nothing to the point made by the Metropolitan Mat Service as the allegations of the complaint are sufficient if it is otherwise sufficient against the contentions made in the motion to dismiss which was joined in by Metropolitan Mat Service and the other defendants, to which I will now turn my attention.

The joint motion to dismiss, of Metropolitan Engravers, Metropolitan Mat Service, the Duffys and Smutz, is based on the following grounds: that the plaintiff's complaint failed to state a claim against any defendant upon which relief could be granted; that it affirmatively appears from the face of the complaint that plaintiff's cause of action is barred by the applicable statute of limitations and by laches; that the complaint fails to set forth each contract made between the plaintiff and the various defendants in separate counts, and that the plaintiff, having sued Frank R. Blade and secured an attachment in the Superior Court, has made an election of remedies which bars it from pursuing the within action. The motions for summary judgment are made upon the same grounds and upon the further ground that there is no genuine issue as to the material fact, that the suit was brought in the state court by plaintiff against Blade and that an attachment was issued and is still in force and effect.

I will discuss the question of estoppel first.

What has heretofore been said about splitting causes of action in connection with the motion of the defendant Blade to dismiss is equally applicable to the remaining defendants.

The basis of the plaintiff's complaint in the instant matter is that all of the defendants joined in one continuous act or one continuous series of acts to defraud the plaintiff. It was one fraud. It was not two frauds, one committed by Blade and one by the other defendants, but according to the allegations of the complaint they all joined, and that is the only basis upon which the plaintiff would be entitled to recover. That being so, the election of the plaintiff to sue in the state court ex contractu and the securing of the attachment against Blade, affirmed the acts of Blade in dealing with the other defendants and the plaintiff is now estopped to bring the within suit against any of them. Robb v. Vos, supra; Insurance Co. of North America v. Fourth Nat. Bank, 5 Cir., 1928, 28 F.2d 933, certiorari denied 279 U.S. 853, 49 S.Ct. 349, 73 L.Ed. 996.

While the foregoing is sufficient to dispose of the action, I feel obliged to express my views on the other points raised

by the motions to dismiss, in order that any appeal taken will give opportunity for their review.

I will consider first the applicability of the Statute of Limitations.

The statute of limitations may be raised on a motion to dismiss. Suckow Borax Mines Consolidated v. Borax Consolidated, 9 Cir., 185 F.2d 196, 204; Gossard v. Gossard, 10 Cir., 149 F.2d 111.

The controlling statute of limitations is Section 338 of the California Code of Civil Procedure, subdivision 4, which limits the right to bring an action on the ground of fraud or mistake to three years and also provides, "The cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

The original action was filed here on May 2, 1952. The amended complaint under Section 15(c), F.R.C.P., related back to the date of filing the original complaint. It is clear, therefore, that the statute of limitations has not run against any right of the plaintiff to recover within three years prior to May 2, 1952. The plaintiff, in filing the amended complaint, has endeavored to get around the statute of limitations by allegations showing its failure to discover the fraud, when the discovery was made, and how it was made, and why it was not made sooner, under the authority of Prentiss v. McWhirter, 9 Cir., 63 F.2d 712, and other cases cited in my previous memorandum, 110 F.Supp. 96.

The allegations in the amended complaint of the plaintiff in that respect are, in substance, that the plaintiff had no knowledge of the acts and conduct of the defendants, or of the losses and damage suffered by the plaintiff at any time or times prior to or until on or about December 10, 1951. It alleges that the discovery of the fraud occurred as a result of an anonymous letter received by it on or about the 6th day of July, 1951, stating that some unidentified person who engaged in purchasing for plaintiff was receiving secret payoffs; that the letter did not identify or contain any information from which plaintiff could identify either the person in their employ or the person or persons from whom the purchases were being made or the transactions involved; that upon receipt of the letter plaintiff commenced and conducted an investigation as a result of which it discovered that the defendant Blade had personally received a check in the sum of $400 from the defendant Metropolitan Mat Service; that thereupon, and on or about the 10th of December, 1951, upon questioning by plaintiff, the defendant Blade admitted that he had been receiving secret payments, rebates and commissions from other defendants in the within matter in connection with the purchase of engravings; that following a further investigation the plaintiff discovered for the first time the "excessive and unfair rates and prices for engraving" that had been, and were, being charged and collected by said other defendants from the plaintiff; that the plaintiff had at all times prior to December 10, 1951, believed that its employee, Blade, was an experienced, competent, loyal and devoted employee, and reposed complete confidence in the said defendant Blade in connection with the performance of his duties as Advertising Manager; that by reason of its confidence and reliance upon Blade and the secrecy of the agreements and conspiracies and payment by the defendants and receipt by Blade of moneys, the plaintiff did not discover and had no knowledge or means of knowing or learning of the occurrences or the acts made and done pursuant thereto.

While the plaintiff attached to its complaint the summary of payments for only the period beginning February 6, 1942, it nevertheless alleges that the defendants had been engaged in the same conduct since on or about January 1, 1937, a period of more than 15 years prior to the filing of the complaint.

The measure of the right of the plaintiff to recover against the defendants is the difference between what is alleged to be the "fair market price in the Los Angeles area and the prices concurrently

charged other purchasers in said area who were competitors of plaintiff, in like quantities of engraving of like grade and quality was $.030 or less." Whereas, the price charged by the defendants and paid by the plaintiff was the sum of $.044 per unit of engraving. The crucial question is whether or not the plaintiff has met the test set down in Prentiss v. McWhirter, supra. I do not think it has.

 The court can take judicial notice that the plaintiff is a large concern; that its sales run into many millions, if not hundreds of millions, of dollars per year; that it uses cuts and engravings in advertising in newspapers and for many years has used cuts and engravings in catalogs. I think I am justified in taking judicial notice of these facts as the court is supposed to know what everybody else knows and I think every farm boy in America is acquainted with a Sears & Roebuck catalog. I think that the court is also justified in presuming that the plaintiff, in the conduct of its business, with the volume which it does in the many states of the union where it operates, requires the services of auditors. It taxes the credulity too much to believe that the plaintiff, over a fifteen-year period with a volume of business which it did generally and the volume of business which it did in the advertising field requiring cuts and engravings, could not have, with reasonable diligence, ascertained and learned of the peculations of the defendant Blade and the alleged fraud of the other defendants. Moreover, the complaint shows that it had knowledge that the going price was $.030 and surely the plaintiff must have known that during that fifteen-year period it was paying $.044. The complaint is significantly barren of any allegation that the plaintiff did not know and had no means of ascertaining through the fifteen-year period that it could have secured the engravings at a lesser price per unit. And as just indicated, the allegation is exactly to the contrary.

The complaint does not state a claim for relief against Metropolitan Engravers, Metropolitan Mat Service, the Duffys or Smutz for any damages accruing prior to May 2, 1949.

It is next asserted that the complaint does not state a claim for relief because it does not set forth the date of each contract by which plaintiff was defrauded, or the amount involved. On the authority of the cases there cited, I so held in the previous memorandum, 110 F.Supp. 96, at page 103. But on further consideration, while convinced of the desirability of such allegations, I do not regard the lack of them to be fatal, in view of the discovery proceedings, and in view of plaintiff's election to treat the conduct of defendants as one wrong only.

In summary: the motion of defendant Blade for summary judgment on the ground of estoppel is granted; and, the motions of all other defendants to dismiss is granted on the ground of estoppel.

In accordance with the local rules the defendant Blade submitted proposed Findings of Fact and Conclusions of Law in support of his motion to dismiss. The plaintiff will have five days under the local rules to except thereto, after which the court will settle those findings and sign the summary judgment in favor of defendant Blade.

Inasmuch as the entire case will be disposed of by the foregoing, Rule 54(b) is not applicable.

Counsel for defendants Metropolitan Engravers et al. will prepare and submit a judgment of dismissal.