MEMORANDUM ON MOTION TO DISMISS
URBOM, Chief Judge.
This matter is before the court on the defendant’s motion to dismiss, filing No. 39, and the plaintiff’s motion for partial *1261 summary judgment, filing No. 41. In view of my determination that this action is barred by the statute of limitations, there is no need to decide the plaintiff’s motion.
The complaint in this action was filed on July 15, 1970. By it the United States on behalf of Commodity Credit Corporation seeks to recover payments made to the defendant under the Commodity Credit Corporation Charter Act of 1948. The payments were made pursuant to a loan agreement executed in 1960 and renewed in 1961, 1962, and 1963 under reseal agreements. By the extensions the loan became due on July 31, 1964. In lieu of repayment the defendant made delivery of the crop on August 6, 1964.
Counsel’s arguments to the court on the defendant’s motion to dismiss were combined with arguments on the plaintiff’s motion for partial summary judgment and both were based in part upon material offered in evidence in addition to the pleadings. The court has found it helpful to consider a number of the affidavits on file. Thus, the defendant’s motion to dismiss will be considered as one for summary judgment under Rule 56, as provided in Rule 12(c) of the Federal Rules of Civil Procedure. Compare Sears, Roebuck & Co. v. Blade, 123 F.Supp. 131 (U.S.D.C.S.D.Cal.1954), aff’d, 245 F.2d 67 (C.A. 9th Cir. 1954), with United States v. MacEvoy, 10 F.R.D. 323 (U.S.D.C.N.J.1950).
 However, for purposes of the motion the allegations of the complaint will be taken as true, and the court will assume without deciding that the actions of the defendant constituted fraud. On that basis the facts may be stated briefly as follows:
The defendant was the producer of a crop of corn in 1959 from a farm designated as farm C-ll and located in Seward County, Nebraska. The farm was leased from Mrs. Minnie Cadwell and farmed by the defendant under an agreement by which the defendant retained 60 per cent of the crop and Mrs. Cadwell received 40 per cent. The defendant then purchased Mrs. Cadwell’s share and pledged the entire crop, amounting to 13,632 bushels, as security for a Commodity Credit Corporation loan of $14,518.08. The loan corn was resealed pursuant to agreements executed in 1961, 1962 and 1963, extending the maturity date of the loan to July 31, 1964, for which he received storage payments in the amount of $7,693.80. On August 6, 1964, the defendant delivered pledged corn in the amount of 13,738.93 bushels. He was paid an additional $388.-13 for the over-delivery and $1,968.36 as an additional reseal storage payment.
At the time the initial loan agreement was completed the defendant represented that the beneficial interest in the entire amount of corn pledged was and had always been in him or in him and a former producer whom he succeeded before the corn was harvested, as required by 6 C.F.R. § 421.4138(d) (l).[1] Because of this fraudulent representation the defendant became personally liable to the Commodity Credit Corporation for the amount of the loan, interest, any additional payments, and for expenses incurred by the Commodity Credit Corporation, less the market value of the commodity on the date of delivery. See 6 C. F.R. § 421.4016.
The plaintiff seeks judgment in the amount of $9,680.23.
This action is governed by 15 U.S.C. § 714b(c) (1), which provides that no suit may be brought by Commodity Credit *1262 Corporation unless “it shall have been brought within six years after the right accrued on which suit is brought.” The defendant contends that the right accrued on May 26, 1960, when the fraudulent representation was made. The plaintiff argues that the right accrued (1) at the earliest, on July 31, 1964, when the defendant defaulted on his loan, and (2) at the latest, on the date of the discovery of the falseness of the representation, which was during the course of an audit conducted in the last four months of 1966.
As to the plaintiff’s point (1), it should be noted that this action is not an action on the loan. Rolenc’s default is not the basis of the action; the right to sue under the previously noted regulation would exist whether the loan was repaid or the pledged grain forfeited. The date of maturity and default on the loan is of no significance to the plaintiff’s claim. Further, even if each separate reseal agreement were construed as a separate act constituting fraud in that the defendant reaffirmed his statement that he was in compliance with the requirements of the Act, the last such act appears from the pleadings to have occurred on or about July 31, 1963, a time beyond the statute of limitations set forth in § 714b (c).[2]
As to the plaintiff’s point (2), “It is a rule of general application in fraud cases that the statute of limitations begins to run, or laches to attach, when the fraud is discovered by plaintiff or when it could have been discovered by him with due diligence or care on his part.” (Emphasis added) Tobacco and Allied Stocks, Inc. v. Transamerica Corporation, 244 F.2d 902, 903 (C.A. 3rd Cir. 1957). The plaintiff argues that the ASCS County Committee, which must approve all loans under the Act, must rely on and take at face value all statements made by the loan applicant. If this is indeed the case, it is difficult to determine just what function the County Committee serves. The ownership of the farm on which the 1959 corn pledged was produced is a matter of public record. Surely members of a County Committee are aware that a normal landlord-tenant relationship provides for a percentage division of the crop produced, and an awareness of this would lead to an easy determination through inquiry that the application submitted by Rolenc contained a material misrepresentation. A cursory check of easily ascertainable records would have led the Committee, or any other representative of the Commodity Credit Corporation, to make further investigation; an additional six-year period certainly seems a reasonable time within which the facts reasonably could have been discovered. The date of the audit is the date of the discovery of the fraud, but bears no relationship to the date when the fraud was discoverable.[3] The acts constituting the fraud had occurred more than six years prior to the audit, and nothing is shown to have occurred during that period which made the fraud any more discoverable than it was on the day it occurred. Beyond this, there was another delay of nearly four years after the fraud was discovered, resulting in suit being filed nearly ten years after the acts constituting the fraud. A delay of this length approaches oppressiveness.
I hold that the right of action in the Commodity Credit Corporation accrued on the date the fraudulent act initially occurred, and that a suit based on that fraud is barred by the statute of limitations set forth in 15 U.S.C. § 714b (c) (1). Cf., Sears, Roebuck & Co. v. Blade, supra.

. Section 421.4138(d) (1) provides, in part:
“The beneficial interest in the corn must be in the eligible producer tendering the corn for loan or for delivery under a purchase agreement, and must always have been in him, or must have been in him and a former producer whom he succeeded before the corn was harvested . . . ”

. The plaintiff has neither pleaded nor proved concealment of the fraud. See United States v. Arkansas Mills, 216 F.2d 241, 245 (C.A. 8th Cir. 1954).

. Apparently the audit was conducted as a result of a letter from U. S. Senator Carl Curtis. Affidavit of Kenneth L. Brown, plaintiff’s exhibit 11.